Present:  All the Justices

WILLIAM R. SHEPHERD, JR.,

v. Record No. 020188

RICHARD F. DAVIS, ET AL.                    OPINION BY
                                  JUSTICE CYNTHIA D. KINSER
                                       January 10, 2003

JOHN T. HENNING, ET AL.

v. Record No. 020189

RICHARD F. DAVIS, ET AL.

        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Edward W. Hanson, Jr., Judge


     These consolidated appeals concern a parcel of real

estate that is subject to a lease agreement granting the

lessee both a fixed-price option to purchase the tract of

real estate and a right of first refusal.  Such provisions

are generally referred to as a "dual option."  One of the

issues presented in this appeal concerns the interplay

between those two provisions when a third party offered to

purchase the subject property and the lessee failed to

exercise the right of first refusal, attempting instead to

invoke the fixed-price option.  Additional questions are

whether the third-party offeror was entitled to specific

performance and, if not, what amount of damages was

appropriate.  Because we find no error in the chancellor's

decrees holding that the lessee forfeited his contractual

rights by failing to exercise the right of first refusal, and awarding only nominal damages to the third-party offeror, we will affirm those decrees.

## I. MATERIAL FACTS AND PROCEEDINGS

Richard F. and Amelia D. Davis (the Davises) entered into a contract with George J. Parker (Parker or the Parker Estate) in 1981 to purchase a parcel of real estate located a short distance south of Virginia Beach Boulevard in the City of Virginia Beach. Under the terms of the purchase contract and a separate indenture agreement between the parties, the Davises would receive title to the property upon payment in full of the deferred purchase price. The final amortized payment was not due until April 2015.[1] Notably, the purchase contract contained neither an acceleration clause nor a provision allowing prepayment of the purchase price. The contract also prohibited the Davises from conveying their interests in the real estate or assigning the purchase contract without the prior consent of Parker, but provided that they could, with Parker's consent, assign their interests in the contract to "an assignee of adequate financial capability."

---

[1] In 1990, the Davises borrowed additional money, which increased the amount of their deferred obligation and extended the payments to 2015.

In July 1993, the Davises leased this same parcel of real estate to William R. Shepherd, Jr. (Shepherd), for an initial term of five years. The lease agreement contained provisions granting Shepherd both a fixed-price option to purchase and a right of first refusal.[2] This dual option pertained not only to the leased parcel of real estate (referred to as "Parcel 1" in the lease agreement), but also to an adjacent parcel of real estate owned by the Davises (referred to as "Parcel 2" in the lease agreement) (collectively designated the "Property"). The relevant sections of the lease creating the dual option state the following:

23.   OPTION TO PURCHASE AND RIGHT OF FIRST REFUSAL

23.1.  Option.  Upon compliance with the provisions of this Section 23, Tenant shall have the sole and exclusive Option to purchase the Property pursuant to the terms of this Agreement for the continuous period of time commencing on the Commencement Date and ending on the date the lease terminates.  If the Option is properly and timely exercised, as provided in this Agreement, a contract shall then exist between Landlord and Tenant pursuant to which Landlord agrees to sell and Tenant agrees to buy the Property upon the terms and conditions specified in this Section 23.

---

[2] A "Memorandum of Option" was allegedly recorded in the Clerk's Office of the Circuit Court of the City of Virginia Beach.  That document is not part of the record in this case.

3

23.2. Exercise of Option. The Option may be exercised, subject to the terms of paragraph 23.8, by Tenant at any time prior to the expiration of the Lease, which shall be midnight of the last day this lease is in effect. Tenant shall exercise the Option by sending written notice to Landlord prior to the expiration date of the Option specifying Tenant's desire to exercise the Option.

23.3. Purchase Price. The purchase price ("Purchase Price") to be paid by Tenant to Landlord for the Property shall be ONE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($150,000.00)[.]

23.4. Title. Landlord shall convey to Tenant, at Closing, good, indefeasible and marketable title to the Property, free and clear of all liens, encumbrances and easements, other than those to which the Tenant fails to object . . . .
. . . If Landlord is unwilling or unable to correct such objections within [thirty days,] Tenant shall have the option of taking such title as Landlord can give without abatement of the Purchase Price, or terminating this Agreement[.]

* * * *

23.11. Right of First Refusal. Notwithstanding anything contained in this Agreement to the contrary, if Landlord shall receive from a third party ("Offeror") a bona fide written offer to purchase the Property, or any part of it, Landlord shall send to Tenant a copy of the proposed offer ("Offer"), with notification that Landlord intends to accept the Offer. Tenant shall have the right within ten (10) days thereafter to exercise the Option to purchase the Property, or such part of it described in the Offer, pursuant to the terms and conditions contained in the Offer. If Tenant does not elect to purchase the Property or such part of it described in the Offer, within such five (5) day period, Landlord may sell the Property or the part described in the Offer to the Offeror. If Landlord does not sell the

4

Property or any part of it, according to the Offer, then Tenant's right of first refusal shall remain in full force.

Almost five years later, in March 1998, John T. Henning and David J. Cross (Henning/Cross), who jointly owned a parcel of real estate adjoining the Property to the west, offered to buy the Property for $175,000. As specified in the ensuing agreement between Henning/Cross and the Davises, the purchase of the Property was contingent upon vacation of the lot line between the Property and the Henning/Cross parcel. The terms of the agreement also acknowledged that Shepherd had an option to purchase and a right of first refusal with respect to the Property. Accordingly, the Davises, through their attorney, transmitted the Henning/Cross offer (the "Offer") to Shepherd in accordance with the requirements of Paragraph 23.11 of their lease with Shepherd. Shepherd elected not to exercise his right of first refusal because the terms of the Offer were not acceptable to him. Instead, he attempted to exercise his fixed-price option to purchase the Property.

Despite repeated demands from both Shepherd and Henning/Cross, the Davises refused to close on either

agreement.[3]  Consequently, Shepherd and Henning/Cross filed separate bills of complaint for specific performance of their respective agreements with the Davises.  The Davises defended both suits on the basis that it was impossible for them to perform under the terms of either agreement because, pursuant to their purchase contract with Parker, they did not yet own marketable title to Parcel 1.

The matters were consolidated and referred to a commissioner in chancery for presentation of evidence and the submission of a report to a chancellor.  The issues before the commissioner were: (1) whether Shepherd could purchase the Property pursuant to his fixed-price option or whether, having failed to exercise his right of first refusal, Shepherd lost that option; (2) whether Henning/Cross were entitled to specific performance of their agreement with the Davises; (3) whether the Davises were excused from fulfilling their obligations under either agreement based on the defense of impossibility; (4) whether the Davises' rights under the purchase contract with Parker could be assigned; and (5) whether either Shepherd or Henning/Cross were entitled to damages and an award of attorney fees, and if so, in what amounts.

---

[3] The Parker Estate apparently had refused to accept prepayment of the purchase price by the Davises.

After hearing evidence, the commissioner issued his report, finding that the "first refusal clause [was] obviously intended to override the option clause, since it [began] with the language '[n]otwithstanding anything contained in this Agreement to the contrary . . . .' " Concluding that the Henning/Cross Offer to purchase the Property was a " 'bona fide offer' " not made for any improper purpose, the commissioner determined that "Shepherd was required to respond to the right of first refusal, and was not entitled to ignore it by preferring the option."[4]

The Commissioner further concluded that, although the Henning/Cross agreement was "valid and facially enforceable" and had been breached by the Davises, the agreement could not be specifically enforced because it was presently impossible for the Davises to convey marketable title. Their purchase contract with Parker did not contain an acceleration clause or provision allowing prepayment of the purchase price. Nor did it allow an assignment of the Davises' interests without Parker's consent, and there was no evidence of such consent. Thus, the commissioner

_____

[4] Shepherd and the Davises entered into a lease amendment one day after the lease expired. The commissioner found that this document "conferred no further

7

declined to recommend an assignment of the Davises'
interests under their purchase contract with Parker.

However, the commissioner stated that "while
impossibility is a defense to specific performance, it is
no defense to liability for contractual damages."
Consequently, the commissioner recommended an award of
damages in the amount of $376,430 to Henning/Cross as well
as attorney fees and costs. The commissioner also
recommended a reimbursement of certain sums paid by
Shepherd to the Davises in his attempt to exercise his
fixed-price purchase option and to protect his position.

All the parties filed exceptions to the commissioner's
report. Upon considering those exceptions, the chancellor
confirmed the commissioner's findings except those
concerning the reimbursement of certain payments to
Shepherd, the award of damages to Henning/Cross, and the
issue of attorney fees. The chancellor re-referred those
matters to the commissioner.

After hearing additional evidence, the commissioner
submitted a supplemental report. Having learned for the
first time that the Davises actually owned Parcel 2 of the
Property, the commissioner addressed not only the question

rights, and failed to resurrect those which had been
forfeited."

8

whether either Shepherd or Henning/Cross was entitled to an award of damages but also the question whether specific performance could be ordered as to Parcel 2.  With regard to the latter question, the commissioner concluded that specific performance was not appropriate because Parcel 2, by itself, is "landlocked" and because an order directing the Davises to convey solely that parcel would be tantamount to creating a new contract for the parties.

On the issue of damages, the commissioner recommended no award of damages to Shepherd because the commissioner concluded that, having first failed to exercise his right of first refusal, Shepherd forfeited his other contractual rights.  As to Henning/Cross, the commissioner recommended an award of only "nominal damages" to include their costs and attorney fees related to this litigation and any other "out of pocket expenses which would be 'restitutionary.' " Relying on this Court's decisions in Davis v. Beury, 134 Va. 322, 114 S.E. 773 (1922), and Chesapeake Builders, Inc. v. Lee, 254 Va. 294, 492 S.E.2d 141 (1997), the commissioner reasoned that, in order to recover damages for the " 'benefit of the bargain,' " Henning/Cross had to prove one of the following elements: (1) that the Davises acted in bad faith; (2) that the Davises voluntarily rendered themselves unable to complete the conveyance on or

before the time fixed for closing; or (3) that the Davises were able to complete the conveyance but neglected or refused to so do. Although Henning/Cross argued that the Davises had acted in bad faith, the commissioner concluded otherwise and, accordingly, decided that Henning/Cross were not entitled to damages based on the benefit of their bargain.

After considering exceptions to the commissioner's supplemental report, the chancellor confirmed the report and entered judgment against the Davises in favor of Henning/Cross in the amount of $20,040.48.[5] We awarded separate appeals to Shepherd and Henning/Cross but consolidate them for purposes of this opinion. In the Henning/Cross appeal, we also accepted assignments of cross-error filed by the Davises.

## II. ANALYSIS

### A. STANDARD OF REVIEW

On appeal, we affirm a chancellor's decree approving a commissioner's report unless the decree is plainly wrong or without evidence to support it. Snyder Plaza Properties, Inc. v. Adams Outdoor Advertising, Inc., 259 Va. 635, 641, 528 S.E.2d 452, 456 (2000); Lim v. Choi, 256 Va. 167, 171,

---

[5] This sum included $5,761.48 for expenses and $14,279 for attorney and paralegal fees.

501 S.E.2d 141, 143 (1998). A chancellor should sustain a commissioner's factual findings if supported by the evidence, but this principle does not apply to a commissioner's conclusions of law. Chesapeake Builders, 254 Va. at 299, 492 S.E.2d at 144. Similarly, we are not bound by a chancellor's interpretation of a contract because we have the same opportunity as the chancellor to consider the contract language. C.F. Garcia Enterprises, Inc. v. Enterprise Ford Tractor, Inc., 253 Va. 104, 107, 480 S.E.2d 497, 498-99 (1997); Langman v. Alumni Ass'n of the Univ. of Virginia, 247 Va. 491, 498, 442 S.E.2d 669, 674 (1994).

## B. SHEPHERD APPEAL

The primary issue in Shepherd's appeal concerns the relationship between the provisions in the lease with the Davises establishing Shepherd's fixed-price option to purchase the Property and his right of first refusal. Shepherd argues, based on our decision in Cities Service Oil Co. v. Estes, 208 Va. 44, 49, 155 S.E.2d 59, 63 (1967), that a right of first refusal benefits a lessee and must, therefore, be interpreted with that purpose in mind. Interpreting the right of first refusal in that manner, Shepherd contends that the parties' reason for including the dual option was to allow him to purchase the Property

11

pursuant to whichever provision was more favorable to him at the time based on a comparison of the terms of his fixed-price option with those presented in a third-party offer. In Shepherd's view, the fixed-price option set a ceiling on the purchase price of the Property, and the right of first refusal allowed him to buy the Property at a lower figure by matching a third-party offer.

With regard to the prefatory language "[n]otwithstanding anything contained in this Agreement to the contrary," Shepherd posits that this phrase means that, notwithstanding the fact that he had a fixed-price option, he also had the right to purchase the Property at the price set forth in a bona fide third-party offer. The terms of the dual option, says Shepherd, are not contradictory. Instead, the two provisions are separate and distinct, creating two ways in which he can elect to purchase the Property. According to Shepherd, the fixed-price option remains in effect throughout the term of the lease even if he elects not to exercise his right of first refusal and the Davises sell the Property to a third party.

We agree that generally a fixed-price option is included in a lease to benefit the lessee, see id., but that principle does not control our interpretation of the provisions at issue. In Cities Service Oil, this Court

addressed a dual option in a lease, but the issue was whether the right of first refusal contained in that particular lease applied to a public judicial sale. Id. at 45, 155 S.E.2d at 60. We were not called upon in that case, as we are here, to decide whether either provision took precedence over the other.

There is a split in authority on this issue. Some courts have held that a lessee may exercise a fixed-price option without regard to a right of first refusal. See e.g. Gulf Oil Corp. v. Chiodo, 804 F.2d 284, 286 (4th Cir. 1986); Amoco Oil Co. v. Snyder, 478 A.2d 795, 798-99 (Pa. 1984); Butler v. Richardson, 60 A.2d 718, 722 (R.I. 1948); Crowley v. Patterson, 306 N.W.2d 871, 875 (S.D. 1981). Other courts have concluded that a lessee forfeits the right to purchase under a fixed-price option when the lessee refuses to exercise a right of first refusal after being presented with a third-party offer. See e.g. Shell Oil Co. v. Blumberg, 154 F.2d 251, 252-53 (5th Cir. 1946); Northwest Racing Ass'n v. Hunt, 156 N.E.2d 285, 288 (Ill. App. Ct. 1959); Tarrant v. Self, 387 N.E.2d 1349, 1353 (Ind. Ct. App. 1979); M & M Oil Co. v. Finch, 640 P.2d 317, 320-21 (Kan. Ct. App. 1982). However, courts agree that the interpretation of dual-option provisions turns upon the particular language used and that a decision construing a

dual option in one agreement will not necessarily be persuasive or controlling in a case involving a different agreement. Chiodo, 804 F.2d at 286; Bobali Corp. v. Tamapa Co., 340 A.2d 485, 490 (Pa. Super. Ct. 1975); Crowley, 306 N.W.2d at 873.

We find the terms of the dual-option provisions in this case to be clear and unambiguous. Thus, we construe those terms according to their plain meaning. Golding v. Floyd, 261 Va. 190, 192, 539 S.E.2d 735, 736 (2001); Winn v. Aleda Const. Co., 227 Va. 304, 307, 315 S.E.2d 193, 194-95 (1984). In doing so, we do not treat any word or phrase as meaningless if a reasonable meaning can be given to it. Dominion Saving Bank, FSB v. Costello, 257 Va. 413, 417, 512 S.E.2d 564, 567 (1999); Winn, 227 Va. at 307, 315 S.E.2d at 194-95.

Applying these principles to the dual-option provisions at issue, we are persuaded that the prefatory language modifies the fixed-price option and gives the right of first refusal precedence. The fixed-price option is the only provision in the lease that, by its terms, is "contrary" to Shepherd's right of first refusal. We agree with the Davises' argument that "the use of the term 'contrary' suggests the terms being overridden are not complementary." The phrase "[n]otwithstanding anything

14

. . . to the contrary" means irrespective of the fixed-price option.  To read this phrase as Shepherd suggests would render meaningless not only the prefatory language but also two other sentences found in Paragraph 23.11, which created the right of first refusal.

The first of those sentences provides that, if the Davises receive a third-party offer to purchase the Property (designated in the lease as the "Offer"), Shepherd has the right to "exercise the Option to purchase the Property [defined in the recital section of the lease as Shepherd's 'option to purchase . . . Parcels 1 and 2'], or such part of it described in the Offer, <u>pursuant to the terms and conditions contained in the Offer.</u>"  (Emphasis added.)  This sentence means that, when the Davises communicated the Henning/Cross Offer to Shepherd, his fixed-price option became subject to the terms of the Offer, despite the fact that those terms were "contrary" to the terms contained in the fixed-price option.  Shepherd no longer had the right to purchase the Property for the amount established in the fixed-price option.

The second sentence is found at the conclusion of Paragraph 23.11.  That sentence provides that, if the Davises do not sell the Property in accordance with the Offer, Shepherd's right of first refusal remains in effect.

Noticeably absent is any statement that, in those circumstances, the fixed-price option to purchase also remains in effect.  Contrary to Shepherd's argument, his fixed-price option does not survive in that situation.[6]

Thus, we conclude that, upon receipt of the Henning/Cross Offer, Shepherd had the right to purchase the Property but only pursuant to the terms and conditions of the Offer.  He no longer could purchase the Property under the terms of his fixed-price option.

As an alternative argument, Shepherd contends that he was not obliged to exercise the right of first refusal because the Henning/Cross Offer was not "bona fide" as required by the terms of Paragraph 23.11.  He enumerates two reasons for this contention: (1) the Offer "contained a 'poison pill' making it unreasonable for Shepherd to accept it[,]"; and (2) the terms of the Offer "required far more than the mere purchase of the [Property]."  Both of these reasons turn on the fact that the Henning/Cross Offer was contingent upon vacation of the lot line between the

---

[6] Our conclusion is not altered by Shepherd's assertion that a "Memorandum of Option" was recorded in the land records for the City of Virginia Beach.  See Code §§ 55-57.1 and -57.2.  Shepherd's rights vis-à-vis the Davises are determined by the lease agreement.

Property and the parcel of real estate owned by Henning/Cross.[7]

Shepherd asserts that this contingency was a "poison pill" for him because, if he exercised the right of first refusal, he would have to eliminate the lot line between the Property and an adjacent parcel of real estate situated to the north and owned by Lynnhaven Realty, L.L.C. (Lynnhaven Realty). Although Shepherd acknowledged that he owned Lynnhaven Realty, he, nevertheless, claimed that he

---

[7] Henning testified before the commissioner that the purpose of vacating the lot line was to unify the title between the two parcels so that an easement for the benefit of the Property across the Henning/Cross parcel could be eliminated. That easement provided access to the Property from Parker Lane, which in turn accessed Virginia Beach Boulevard. Henning further agreed that vacating the lot line and unifying the title would end the reason for the then pending litigation involving the easement.

That easement has been the subject of ongoing litigation between the same parties that are before us in these two appeals. In Davis v. Henning, 250 Va. 271, 277, 462 S.E.2d 106, 109 (1995), we held that an easement by necessity exists over the Henning/Cross property for the benefit of the parcel referred to in this opinion as Parcel 1. Subsequently, when Henning/Cross allegedly blocked the easement, Shepherd and the Davises each commenced suits against Henning/Cross. According to the answer filed by the Davises in the present suit, the purpose of their agreement with Henning/Cross was to settle that second round of litigation. After the execution of the agreement between the Davises and Henning/Cross, the Circuit Court of the City of Virginia Beach ruled that Henning/Cross could not block the easement or interfere with either Shepherd's or the Davises' use of it. This Court refused to award Henning/Cross an appeal from that decree. Davis v. Henning, No. 982364 (Feb. 18, 1999).

17

could not fulfill that requirement because two different entities would own the parcels, unless he took title to the Property in the name of Lynnhaven Realty, and vacating the lot line would leave the Property landlocked.[8]  Shepherd also admitted that paying an additional $25,000 for the Property was not acceptable to him.

We are not persuaded by Shepherd's argument.  The term "bona fide" is defined as "[m]ade in good faith; without fraud or deceit."  Black's Law Dictionary 168 (7th ed. 1999).  Like the commissioner, we find no evidence that the Henning/Cross Offer was made for any improper purpose.  The fact that acceptance of the Offer would have resolved pending litigation about the easement does not mean that it was made in bad faith or was to perpetrate a fraud.  Shepherd suggests on brief that the terms of the Offer were designed to make it unreasonable for him to purchase the Property.  However, neither his displeasure with those terms nor the fact that they were more burdensome for Shepherd than the terms of his fixed-price purchase option changes our conclusion that the Henning/Cross Offer was bona fide.

_____

[8] We note that Lynnhaven Realty did not acquire title to its property until sometime between January and June 1998, when Shepherd deeded the property to it.  During that time frame, Henning/Cross offered to purchase the Property.

18

Thus, we hold that there is no error in the decree of the chancellor confirming the commissioner's findings that the Henning/Cross Offer was bona fide and that Shepherd forfeited his contractual rights to purchase the Property by failing to exercise his right of first refusal upon receipt of the Offer.  Having forfeited those contractual rights, Shepherd was not entitled to either specific performance or damages.[9]

## C. HENNING/CROSS APPEAL

The assignments of error in the appeal awarded to Henning/Cross can be narrowed to two questions: (1) whether the chancellor erred by failing to award specific performance to Henning/Cross; and (2) whether, having denied specific performance, the chancellor erred by awarding only "nominal" damages to Henning/Cross rather than damages based on the "benefit of the bargain."[10]  We will address the questions seriatim.

## 1. SPECIFIC PERFORMANCE

---

[9] It is not necessary to address Shepherd's remaining assignments of error.

[10] The Davises assert on brief that Henning/Cross failed to assign error to the commissioner's finding that it was impossible for the Davises to convey fee simple title to Parcel 1.  That assertion is correct, but we still must address whether the chancellor erred by refusing to order an assignment of the Davises' interests in Parcel 1.

19

Henning/Cross assert that they were entitled to specific performance of their contract with the Davises with an abatement of the purchase price. In particular, they claim that they demanded and were willing to accept an assignment of the Davises' rights under their purchase contract with Parker as to Parcel 1 and a deed from the Davises conveying Parcel 2 to Henning/Cross, with an appropriate abatement of the purchase price. At the hearing before the commissioner, Henning confirmed that he and Cross were still willing to accept an assignment of the Davises' contractual rights on the terms previously outlined in a letter to the Davises' attorney. In that letter, Henning/Cross advised that they were ready, willing, and able to close on the purchase of the Property, and that, if necessary, they would "pay the full purchase price less the provable assumption balance" and take an assignment of the Davises' contractual rights under their agreement with Parker.

As Henning/Cross argue, we recognize, as a general rule, that "when there is a deficiency in title, quantity, or quality of an estate, the purchaser has the option to require the seller to convey such part as the seller is able, with an abatement of the purchase price for any deficiency." Chesapeake Builders, 254 Va. at 300-01, 492

S.E.2d at 145 (citing Turner v. Holloway, 146 Va. 827, 834, 132 S.E. 685, 687 (1926); Millman v. Swan, 141 Va. 312, 322, 127 S.E. 166, 169 (1925)); accord Firebaugh v. Hanback, 247 Va. 519, 526, 443 S.E.2d 134, 137 (1994); Hawks v. Sparks, 204 Va. 717, 720, 133 S.E.2d 536, 539 (1963). However, the rule is not absolute; we have recognized exceptions. "[S]pecific performance of a contract is not a matter of right, but rests in the discretion of the trial court to be granted or refused according to established principles and the facts of each case." Hawks, at 720, 133 S.E.2d at 539 (citing Raney v. Barnes Lumber Corp., 195 Va. 956, 970, 81 S.E.2d 578, 586 (1954); Griscom v. Childress, 183 Va. 42, 47-48, 31 S.E.2d 309, 312 (1944); Darling v. Cumming's Ex'or, 92 Va. 521, 525, 23 S.E. 880, 881 (1896)); accord Firebaugh, 247 Va. at 526, 443 S.E.2d at 137.

One such exception arises when a purchaser is not asking for specific performance of a contract " 'as far as the vendor is able.' " Reid v. Allen, 216 Va. 630, 633, 221 S.E.2d 166, 169 (1976) (quoting Robinson v. Shepherd, 137 Va. 687, 695, 120 S.E. 265, 267-68 (1923)). In Reid, the purchasers sought to require a conveyance of a seller's undivided one-half interest in a certain tract of real estate in exchange for payment of one-half of the contract

price with an abatement to be determined by the court.  Id. at 631, 221 S.E.2d at 168.  We concluded that the purchasers, "in effect, [sought] to convert an agreement to sell the whole estate into one for a sale of one of the undivided shares[,]" amounting to a "substitution of an agreement which the parties had not contracted for."  Id. at 633-34, 221 S.E.2d at 169.  Thus, because the evidence supported the commissioner's finding that the parties never intended to sell less than the whole estate, we denied specific performance.  Id.; see M'Cann v. Janes, 40 Va. (1 Rob.) 256, 261 (1842) ("plaintiff in a bill for specific performance must not . . . call upon the other party to do an act which he is not lawfully competent to do").

As pointed out by the commissioner in the present case, the purchase contract between the Davises and Parker contains a provision explicitly prohibiting a conveyance or assignment of the Davises' interests in the contract and the Property without Parker's consent.  There is no evidence of such consent in this record.  In fact, Michael J. Parker, trustee of a testamentary trust established by Parker, who was Michael's father, testified before the commissioner that, while the purchase contract with the Davises could have been terminated or amended if all the parties agreed, there had not been any such agreement.

Michael Parker also stated that no offer had been presented to the Parker Estate "that would be a sufficient incentive" to allow the Davises to prepay their obligation under the purchase contract and "to tear up this contract and substitute something else for it." [11]

Thus, Henning/Cross are not asking for specific performance "as far as the [Davises] are able." Reid, 216 Va. at 633, 221 S.E.2d at 169. The Davises cannot perform as requested. An assignment of their interests in the purchase contract with Parker would constitute a breach of that contract. We agree with the commissioner; action should not be ordered that would violate the contract.

We also agree with the commissioner's finding that specific performance should not be granted with regard to only Parcel 2. Such relief would leave Parcel 2 landlocked because the easement across the property of Henning/Cross runs only to Parcel 1. Davis v. Henning, 250 Va. 271, 277, 462 S.E.2d 106, 109 (1995).

---

[11] In a letter dated August 24, 1998, from an attorney representing the Parker Estate to the Davises' attorney, the Parker Estate indicated that it "would, subject to certain conditions and affirmations, permit an assignment to Sans Souci with a full irrevocable payment and performance guarantee by Mr. Shepherd." However, when Michael Parker testified, he stated that, in light of the fact that a year and a half had passed since that letter had been written, he did not presently have a position on

Given the facts of this case, we cannot say that the chancellor abused his discretion by refusing to award specific performance in favor of Henning/Cross with an abatement of the purchase price. As we stated earlier, the decision whether to award specific performance of a contract rests in the sound discretion of a trial court; it is not a matter of right. Hawks, 204 Va. at 720, 133 S.E.2d at 539.

## 2. DAMAGES

As an alternative argument, Henning/Cross assert that, assuming specific performance was properly denied, they are entitled to recover damages based on the loss of their bargain. They ask this Court to reverse the chancellor's finding that they were entitled to only "restitutionary" damages and to award them damages in the amount of $376,430 as recommended by the commissioner in his first report. That figure was based on Henning's valuation of the Property. As an additional alternative position, Henning/Cross claim that they should at least be awarded loss-of-bargain damages in the amount of $315,000 based on expert appraisal testimony at the second hearing before the commissioner.

whether Shepherd's guarantee would constitute adequate financial capability.

24

"The general rule in Virginia is that the measure of damages for failure of the vendor to convey as agreed is the purchase price, or any part thereof, paid by the vendee, with interest from date of payment." Williams v. Snider, 190 Va. 226, 228, 56 S.E.2d 63, 64 (1949); accord Chesapeake Builders, 254 Va. at 299-300, 492 S.E.2d at 145; Davis v. Beury, 134 Va. at 339, 114 S.E. at 777. However, a purchaser of real estate may recover damages beyond the return of the purchase price with interest, i.e. damages for loss of the bargain, if the purchaser proves that the seller

> either acted in bad faith in originally undertaking to
> convey such title [as was contracted to be conveyed],
> or that, since the undertaking and on or before the
> time fixed for the completion of the contract, he has
> voluntarily disabled himself from making the
> conveyance, or that he was able at such time to make
> the conveyance contracted for and willfully neglected
> or refused to do so.

Davis v. Beury, 134 Va. at 339, 114 S.E. at 777; accord Chesapeake Builders, 254 Va. at 299-300, 492 S.E.2d at 145.

In this case, it is not necessary to decide which category of damages Henning/Cross were entitled to recover because either of the amounts they claimed as damages for the loss of their bargain was too speculative in nature to be sustainable. The calculation of both figures was premised on the assumption that the Property could be

25

resold to a large, well-known, home and building supply retailer.  Henning testified at the first commissioner's hearing that he valued the Property at $8.25 per square foot because that was the price at which Henning/Cross had contracted to sell their adjoining property to this retailer.  Henning believed that he could sell the Property to the same purchaser for the same price.

Similarly, at the second hearing, a commercial real estate appraiser opined that, during the time frame of October through December 1999, the Property was worth $9 per square foot "as a part of the adjoining properties." His valuation was premised on the Property being included in the assemblage of surrounding parcels by a developer on behalf of the same retailer and on the contract purchase prices for those adjoining parcels.

The commissioner also received deposition testimony from the real estate developer who, on behalf of that retailer, had negotiated purchase contracts for the parcels adjacent to the Property.  While assembling those parcels and negotiating the purchase contracts, the developer had become familiar with the Property.  He testified that he would have been willing to purchase the Property for $9 per square foot if "clear title" could have been conveyed. However, he acknowledged that any such contract to purchase

26

the Property would have contained the same contingencies as were included in the contracts to purchase the surrounding parcels, including contingencies regarding rezoning.

As the plaintiffs in this suit, Henning/Cross had the "burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery." Carr v. Citizens Bank & Trust Co., 228 Va. 644, 652, 325 S.E.2d 86, 90 (1985) (citing Hale v. Fawcett, 214 Va. 583, 585, 202 S.E.2d 923, 925 (1974); Barnes v. Quarries, Inc., 204 Va. 414, 418, 132 S.E.2d 395, 397-98 (1963)).  Damages based on uncertainties, contingencies, or speculation cannot be recovered.  Barnes, 204 Va. at 418, 132 S.E.2d at 397-98.

As argued by the Davises both before the commissioner and this Court, the damages claimed by Henning/Cross fail under this rule.  All the evidence regarding the value of the Property was speculative because the valuations hinged on the assumption that the Property could be sold to a large home and building supply retailer.  Even the developer admitted that, as of October 1999, the date upon which damages were to be computed, the rezoning contingency had not been fulfilled for any of the parcels under

contract.[12]  Thus, the chancellor did not err in awarding only nominal damages to Henning/Cross, which were restitutionary in nature and included attorney fees.  See Kessler v. Commonwealth Doctors Hospital, Inc., 212 Va. 497, 504, 185 S.E.2d 43, 47 (1971) (judgment affirmed on appeal when chancellor assigned the wrong reason for a ruling but reached the correct result).

### D. ASSIGNMENTS OF CROSS-ERROR

The Davises assign cross-error to the chancellor's award of attorney fees to Henning/Cross and to the chancellor's refusal to consider their "Special Exception" to the commissioner's supplemental report.  In that "Special Exception," the Davises objected to the commissioner's finding that Henning/Cross were entitled to an award of attorney fees.  They also sought to amend their answer to allege the defense of "unclean hands" in response to the claim for attorney fees by Henning/Cross.

The chancellor, in his letter opinion, refused to consider the "Special Exception" because it was not timely filed.  We find no abuse of discretion in that ruling.  The commissioner filed his supplemental report on January 12,

---

[12] When the chancellor re-referred the damage issue to the commissioner, he directed that damages be calculated as of October 1999.  No party assigned error challenging the validity of that date.

28

2001.  However, the Davises did not file the "Special Exception" until May 7, 2001.  Their exception to the commissioner's supplemental report was not timely under the provisions of Code § 8.01-615.

### III. CONCLUSION

For the reasons stated, we will affirm the chancellor's final decree in both suits.  However, we will remand the Henning/Cross appeal for further proceedings to adjudicate their claim for additional attorney fees and costs incurred in the appeal.

Record No. 020188 – <u>Affirmed</u>.
Record No. 020189 – <u>Affirmed and remanded</u>.