## CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Integrity Auto
Specialists, Inc.

v.

Phillip J. Meyer

June 28, 2011

Case No. (Civil) CL10-114

By Judge John W. Brown

The Court issues this letter opinion following a bench trial in this matter on November 15–16, 2010, and the submission of post-trial briefs by counsel in January 2011. Upon consideration of the authorities presented and the arguments of counsel, the Court denies the defendant's plea in bar, but rules for the defendant on the merits with regard to all counts.

### I. *Background*

This is another Virginia case arising from the machinations of the "rough-and-tumble world comprising the competitive marketplace." *E.g.,*

*Commercial Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 294 (1997). Plaintiff Integrity Auto Specialists ("Integrity") is in the business of automotive reconditioning or detailing, preparing vehicles for sale at various automobile dealerships. On April 18, 2005, Phillip Meyer, the defendant, entered into an employment contract with plaintiff, the provisions of which are focal to this litigation. While employed by Integrity, Meyer serviced four dealership accounts: (1) Colonial Auto Center, (2) Battlefield Ford, (3) Jim Price Chevrolet, and (4) Cross Roads Chrysler Jeep, all located within the Hampton Roads market. Said market covers an area beyond what is traditionally recognized as Southeast Virginia and encompasses greater Richmond, Charlottesville, and Fredericksburg as well.

After formulating a plan to begin his own auto detailing business, Meyer contacted the managers of the aforementioned automobile dealers, informing them that he was leaving Integrity. Upon the dealers' inquiries, Meyer revealed that he was leaving to start his own auto detailing company, which would be "up and running" within a month.

Defendant subsequently ended his employment with Integrity on June 18, 2009, to begin management of A Clear Solution, L.L.C., the detailing company he previously formed on May 27, 2009. Subsequent to terminating his employment with Integrity, defendant performed work for two of the dealerships, Colonial Auto Center and Battlefield Ford.

This litigation commenced thereafter, with plaintiff filing a five-count complaint alleging: (1) breach of contract; (2) breach of fiduciary duty; (3) breach of duty of loyalty; (4) tortious interference with contract and/ or contract expectancy; and (5) violation of the Virginia Uniform Trade Secrets Act. Plaintiff voluntarily dismissed Count V: Virginia Uniform Trade Secrets Act on the first day of trial.

The defendant filed a demurrer, which was overruled, followed by a plea in bar, which the Court addresses below, in addition to the remaining four counts of the complaint.

## II. *Analysis*

In the wake of trial, the Court recognizes the following major issues, addressed in relevant order.

### A. *Defendant's Plea in Bar: Application of the Virginia Anti-Trust Act*

At oral argument and on brief, defendant maintains that the Virginia Anti-Trust Act, Virginia Code § 59.1-9.1 *et seq.* prohibits plaintiff's recovery for breach of contract because the statute provides "every contract . . . in restraint of trade or commerce in this Commonwealth is unlawful." Va. Code § 59.1-9.5. As defendant properly notes, post-employment restrictive covenants, such as those at issue in the instant matter, are considered

"restraints of trade." *See, e.g., Modern Env'ts v. Stinnett*, 263 Va. 491, 493 (2002). As a consequence, defendant argues that the statute is an alteration of the common law governing restrictive covenants,[1] and as such, should be given effect to invalidate all post-employment restrictions, particularly the ones at bar.

While defendant is correct in noting that the courts of the Commonwealth are not free to ignore to the plain language employed by the General Assembly, the legislature was not so parsimonious as to leave the courts perplexed as to whether § 59.1-9.5 invalidates all restrictive covenants, not to mention a substantial body of private contract law. As plaintiff ably notes, the Virginia Antitrust Act is to be "applied and construed to effectuate its general purpose in harmony with judicial interpretation of comparable federal statutory provisions," to wit, the Sherman Antitrust Act.[2] Va. Code § 59.1-9.17.

The Sherman Act similarly prohibits all agreements "in restraint of trade," and federal courts, including the Supreme Court of the United States, have long held that this language is not to be applied literally. *See, e.g., Texaco, Inc. v. Dagher*, 547 U.S. 1, 5 (2006); *National Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 687–88 (1978); *Net Realty Holding Trust v. Franconia Props., Inc.*, 544 F. Supp. 759, 764 (E.D. Va. 1982) ("Congress did not intend § 1 to eliminate all commercial arrangements. . . ."). Rather, federal courts focus on the anti-competitive consequences of activities "in restraint of trade" on the affected market. *See, e.g., National Soc'y of Prof'l Eng'rs*, 435 U.S. at 688–92.

Correspondingly, as plaintiff again observes, where the Sherman Act has not been previously applied to a given practice, federal courts apply the "rule of reason," which mandates analysis of all factual circumstances to determine whether a business arrangement is properly prohibited as an unreasonable restraint on competition. *See Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49 (1977); *Franconia Props., Inc.*, 544 F. Supp. at 768.

Under § 59.1-9.17 of the Virginia Anti-Trust Act, this Court thus examines the federal decisions construing the Sherman Act and applies the rule of reason to § 59.1-9.5, as no reported Virginia opinions located by counsel or the Court precisely address the issue at bar. Balancing the anti-competitive nature of employment covenants against their market benefits and considering the relevant precedents of the Supreme Court of Virginia

---

[1]    *See* Va. Code § 1-200 ("The common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly.").

[2]    15 U.S.C. § 1 *et seq.*

"strictly construing" such employment agreements,[3] the Court nevertheless finds that such agreements, in the abstract, as argued by defendant, are not prohibited by Virginia Code § 59.1-9.5.

Accordingly, the defendant's plea in bar is denied, and the Court considers the remaining merits of the case as presented at trial.

## B. *Plaintiff's Election To Litigate and Forego Arbitration*

Among the provisions of the employment contract at issue, paragraph seventeen stipulates that all disputes arising under the agreement shall be resolved through mediation and arbitration, save for suits by the employer necessary to enforce the restrictive covenants of the agreement or to enforce an arbitration award. Defendant maintains that plaintiff, by filing the instant suit, violated its own agreement, in which both parties "waived the[] right to file a lawsuit or claim" except as noted above.

Without delving into an expansive discussion of the Virginia Uniform Arbitration Act as applied to the complaint in this action, the Court recognizes that the statute allows either party to petition the court for entry of an order compelling the parties to arbitration. *See* Va. Code § 8.01-581.02(A). While Meyer maintains that Integrity should have moved the Court to compel arbitration pursuant to the statute, defendant himself failed to make such motion at the appropriate time.

As articulated at the beginning of trial, the Court thus finds that defendant, in declining to file a motion to compel arbitration at the appropriate time, waived any objection to the propriety of the current litigation in lieu of arbitration. *See, e.g., Carrico v. Empire Today, L.L.C.*, 80 Va. Cir. 395, 397 (Fairfax County 2010) (citing *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)); *Britt Constr. Co. v. Westpack Realty Fund VII, L.L.C.*, 60 Va. Cir. 314, 314–16 (Loudoun County 2002); *see also Hanover Fire Ins. Co. v. Drake*, 170 Va. 257, 265 (1938). This matter was filed on January 13, 2010, and discovery proceeded until trial. Neither party moved the Court to stay the proceedings for arbitration; however, the parties did, on their own, participate in informal mediation efforts. To reiterate, the Court finds, based on the circumstances of this case and the actions of the parties, waiver of arbitration by both parties is clear.

The Court finds extreme prejudice would inure to plaintiff if the parties were ordered to arbitration over six months after the conclusion of trial. Indeed, the defendant does not actually seek to compel arbitration, which, in the Court's view, is the only remedy within the realm of legal possibility at this stage of the litigation.

---

[3]    *See, e.g.*, Motion Control Sys. v. East, 262 Va. 33, 37 (2001) (citing Richardson v. Paxton Co., 203 Va. 790, 794–95 (1962)).

C. *Termination of the Employment Contract and Persistence of the Employment Restrictions*

1. *Continuation of the Employment Restrictions after Termination of the Contract: Is There Life after Death?*

Assuming for the sake of argument that the contract between Meyer and Integrity is enforceable in its entirety, the Court examines whether Meyer cancelled the contract by terminating his employment and the impact of such cancellation on the subsequent enforceability of the employment covenants contained therein.

The employment contract at issue provides for its termination as follows: "This Agreement is based upon mutual consent and shall be governed under Virginia's at-will doctrine of employment. Either Employer or Employee may, in their sole discretion, elect to terminate this Agreement and the employment relationship described herein, with or without cause."

Were the Court to rule that the above language is ambiguous, such ambiguity would be construed against Integrity, the drafting party, under long-settled principles of Virginia contract law. *See, e.g., Martin & Martin, Inc. v. Bradley Enters.*, 256 Va. 288, 291 (1998) (citing *Mahoney v. NationsBank of Va.*, 249 Va. 216, 222 (1995); *Winn v. Aleda Constr. Co.*, 227 Va. 304, 307 (1984)); *First Am. Title Ins. Co. v. Seaboard Sav. & Loan Assoc.*, 227 Va. 379, 386 (1984) ("In the interpretation of written contracts, every part of the writing must be made, if possible, to take effect, and every word of it must be made to operate in some shape or other. And, where all other rules of construction fail, the words of the covenant must be construed most strongly against the covenantor." (quoting *State Farm Mut. etc. Ins. Co. v. Justis*, 168 Va. 158, 167 (1937) (quoting *Tate v. Tate's Ex'r*, 75 Va. 522, 527 (1881))))). However, the date of cancellation is of little relevance, as it only impacts upon plaintiff's contract-based claim and not those pertaining to the independent torts alleged.

At trial, Integrity presented evidence that Meyer's employment ended on June 18, 2009. This represents the date on which the employment contract was terminated; however, the alleged solicitations occurred before this date of termination.

Consequently, the Court finds that the termination, effective or not, did not retroactively remove the effect of the agreement's non-solicitation provisions. Assuming for the time being that the agreement was in fact enforceable, it was effective until the point at which defendant cancelled it.

2. *Enforceability of the Restrictive Covenants*

The employment contract entered by Meyer and Integrity contains two employment restrictions at issue, titled "Covenant Not To Compete" and

"Non-solicitation of Business." The Court now analyzes these provisions upon an obviously more robust foundation than was available at the demurrer stage. Nevertheless, the Court begins its analysis at the same point, with the express language of the contract at issue.

Paragraph Ten, "Covenant Not To Compete," states:

> Employer and Employee agree that, with the exception of the restrictive covenants contained herein, Employee shall not be restrained from becoming gainfully employed in similar business following termination of employment with Employer.

The provision focal to this suit, however, Paragraph Twelve, sets out the particular employment restrictions:

> During Employee's employment by Employer and for a period of Twenty-Four (24) months after termination of employment, Employee shall not, *directly or indirectly, solicit business* from, divert business from, or attempt to convert to other methods of using the same or similar products or services as provided by Employer; (a) any client, account *or location* of Employer *with which Employee has had any contact* as a result of his or her employment by Employer; (b) any client, account, *or location* of Employer *with which Employer* has performed services during the Twenty-Four (24) months prior to termination of his or her employment.

(Emphasis added.)

The employment restrictions at issue are, in essence, simply restrictions on defendant's ability to solicit clients of Integrity. Defendant maintains that these provisions are: (1) facially overbroad and/or ambiguous, (2) unreasonable and unjustified based on the evidence presented, and (3) inconsequential in any event, as plaintiff failed to prove any material breaches by defendant and did not present competent evidence of damages. The issue of damages is separately addressed in Part II.G.

To determine the validity of the solicitation prohibitions at issue, the Court first examines the face of the contract, reviewing the language quoted above. This language is extraordinarily broad, reaching far beyond the simple scope of defendant's potentially competing with plaintiff in the auto detailing business. As written, the agreement prevents Meyer from soliciting any business whatsoever from any "client, account, or location" with which any Integrity employee completed any service within the prior twenty-four months. Plaintiff's testimony indicated Integrity believed the solicitation prohibition to include general "advertising and marketing." Such a restriction on defendant's employment is impermissible on its

face; defendant is effectively prohibited from soliciting business across the spectra of locations and trades. *See, e.g., Omniplex World Servs. Corp. v. US Investigations Servs., Inc.*, 270 Va. 246, 250 (2005) (finding a non-compete agreement overbroad and unenforceable, as it was not limited to employment directly in competition with the former employer); *Stinnett*, 263 Va. at 495; *East*, 262 Va. at 37–38; *TradeStaff & Co. v. Nogiec*, 77 Va. Cir. 77, 82 (Chesapeake 2008) ("The [Supreme Court of Virginia] has most often held that non-compete agreements are enforceable when limited to the area formally serviced by the former employee or within a set mile radius of the area formerly serviced by the former employee." (citing *New River Media Group, Inc. v. Knighton*, 245 Va. 367, 368 (1993); *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 239 Va. 369, 372–74; *Paramount Termite Control Co. v. Rector*, 238 Va. 171, 175–76 (1989))).

An agreement so facially broad as to prevent an auto detailer from tendering his services to clients of his former employer as a concert promoter, fishing guide, sous chef, or plumber, *inter alia*, cannot be upheld under the precedents discussed above, especially when such services may not even be offered in markets where the employee never personally performed services for the employer and/or the employer no longer conducts business.

The courts of this Commonwealth do not engage in the practice of "blue-penciling" contracts, and this Court will likewise not construe the contractual provisions contrary to their facial import as to save the agreement of the parties by artfully interpreting around the impermissible portions. *See, e.g., Landmark HHH, L.L.C. v. Park*, 277 Va. 50, 57 (2009) (citing *TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.*, 263 Va. 116, 119 (2002)); *Bergman v. Bergman*, 25 Va. App. 204, 214 (1997) ("Where there is no ambiguity in the terms of a contract, we must construe it as written . . . and we are not at liberty to search for the meaning of the provisions beyond the pertinent instrument itself." (quoting *Smith v. Smith*, 3 Va. App. 510, 514 (1986))).

Furthermore, the evidence presented at trial affirms the Court's facial finding that the restrictive covenants are ambiguous and overbroad. Most notably, the restrictions operate in five markets, comprising locations in Virginia, Georgia, Colorado, Arizona, and California, despite the fact that Integrity no longer conducts operations in Arizona and California. In these five markets, Integrity asserted that Meyer was prohibited from soliciting business from unidentified customers and did not provide the means for Meyer to identify these customers and claimed he was prohibited from operating in those vacated markets, *i.e.*, all of California and Arizona.

### D. *Count I: Breach of Contract*

For the reasons articulated above regarding termination of the employment contract, the Court denies plaintiff's claim alleging breach of contract.

E. *Count II: Breach of Fiduciary Duty and Count III: Breach of Duty of Loyalty*

The counts alleging breach of fiduciary duty and the duty of loyalty are effectively the same; the pleadings and the evidence presented focus upon the alleged breach of the duty of loyalty, which is where the Court correspondingly focuses its analysis.

All employees, including those at-will, owe to their employers a common-law fiduciary duty of loyalty. *Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 289 (2003) (citing *Horne v. Holley*, 167 Va. 234, 241 (1936)). This duty imposes restrictions upon the employee, chief among which is the duty to not compete with one's employer during the course of employment. *Id.* Encompassed in the employee's duty to not compete is the prohibition against solicitation of clients from the employer. *Id.* (citing *Hilb, Rogal & Hamilton Co. of Richmond v. DePew*, 247 Va. 240, 249 (1994)). Notwithstanding the aforementioned prohibition, the employee does have "the right to make arrangements during his employment to compete with his employer after resigning his post." *Id.* Such arrangements may include the planning and formation of a new, competing corporation while the employee still owes a duty of loyalty to his current employer, as in the situation at bar. *See Scientific Enters., Inc. v. George*, 47 Va. Cir. 9, 14 (Fairfax County 1998).

At trial, defendant admitted that he began planning the creation of his company, A Clear Solution, L.L.C., while still in the employ of plaintiff and, in fact, obtained his business license prior to his departure on June 15, 2009. Testimony indicated that defendant did not precisely follow Integrity's unwritten policy for "transitioning" clients when an employee who serviced a client was leaving plaintiff's employ. It should be noted and is agreed that the contract entered by the parties did not contain a termination notice provision; plaintiff was merely an at-will employee of defendant. Moreover, the plaintiff offered no proof of any "solicitation" or active attempts by the defendant to "divert" business to himself. Such evidence would be pivotal in a case such as this.

Defendant's pre-termination actions are, at minimum, "arrangements" made during his employment in contemplation of post-termination competition with his employer, the plaintiff. However, whether such actions were designed to solicit existing clients from Integrity, in breach of the fiduciary duty of loyalty, depends on the evidence presented, and the Court finds that such evidence did not establish such a breach. While the Supreme Court of Virginia has not ruled upon an analogous case, this Court draws guidance from the opinions cited herein and notes that the law of this Commonwealth is generally permissive of "rough-and-tumble" conduct in the employment marketplace.

The exact quantum of this breach of fiduciary duty, if any, is moot, however, as demonstrated by the analysis in Part II.G of this opinion, which addresses the sufficiency of plaintiff's evidence regarding damages.

For the reasons stated above and the facts as set forth throughout this opinion, the Court denies recovery for the claims alleging breach of loyalty and fiduciary duties and rules for the defendant on these counts.

### F. *Count IV: Tortious Interference with Contractual Relations or Business Expectancy*

The law in Virginia pertaining to tortious interference with contractual relations or business expectancies is well established; to recover upon such a claim, a plaintiff must prove: (1) a valid contractual relationship or business expectancy; (2) knowledge of such relationship by the defendant; (3) an intentional act on the part of the defendant, causing a breach of the contract or termination of the relationship; and (4) resulting damage to the plaintiff. *E.g., DurretteBradshaw v. MRC Consulting*, 277 Va. 140, 145 (2009) (citing *Chaves v. Johnson*, 230 Va. 112, 120 (1985)).

If a plaintiff alleges tortious interference with a contract terminable at will, an additional element must be alleged and proved: that in interfering with the contract, the defendant employed "improper methods." *E.g., Peace v. Conway*, 246 Va. 278, 281 (1993) (quoting *Duggin v. Adams*, 234 Va. 221, 226–27 (1987)). Improper methods effectively amount to "illegal or independently tortious" means of interference, including "violations of statutes, regulations, or recognized common-law rules," such as "violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." *Id.* (quoting *Duggin v. Adams*, 234 Va. 221, 226–27 (1987)); *see, e.g., International Paper Co. v. Brooks*, 63 Va. Cir. 494, 498 (Roanoke City 2003) (citations omitted).

The Court does not address all of the above elements, as no evidence was presented that would support plaintiff's claim with regard to such improper methods or resulting damages, as discussed throughout this opinion. Indeed, testimony solicited from the plaintiff's own witnesses made clear that plaintiff had no evidence that the defendant "solicited" business "directly or indirectly" from any client of Integrity. The flat allegation that, since the defendant performed work for two of Integrity's clients does not constitute "diverting" business from the plaintiff. The credible testimony indicated that the defendant advised those parties to stay with Integrity. The Court cannot under these circumstances rule that, because the defendant has completed some work for those entities, he must have tortiously interfered with Integrity's commercial relationships to obtain such business; it is the

plaintiff's burden to prove such actions. As a consequence, plaintiff's claim for tortious interference with contractual relations is denied.

## G. *Sufficiency of Plaintiff's Damages Evidence Pertaining to All Counts*

Even if the Court is in error vis-à-vis its analysis of the preceding counts, the plaintiff is nevertheless barred from recovery, as it failed to present acceptable evidence of its alleged damages.

A plaintiff may recover under Virginia law for profits lost due to interference with an established business, provided such profits are "capable of reasonable ascertainment. . . ." *E.g., United Constr. Workers v. Laburnum Constr. Corp.*, 194 Va. 872, 887 (1953), *aff'd*, 347 U.S. 656 (1954) (citations omitted).

In independently assessing whether plaintiff adequately presented evidence of such damages resulting from defendant's actions, this Court again treads upon established ground. As articulated by the Supreme Court of Virginia and argued by defendant extensively at trial and on brief, the appropriate assessment of damages in this case is plaintiff's "lost profits" for breach of contract, and damages must be established with certainty to warrant recovery on all counts. *See, e.g., SunTrust Bank v. Farrar*, 277 Va. 546, 554 (2009); *Saks Fifth Avenue v. James, Ltd.*, 272 Va. 177, 188–89 (2006) (quoting *Sinclair Refining Co. v. Hamilton & Dotson*, 164 Va. 203, 211 (1935) (citing *Manss-Owens Co. v. H. S. Owens & Son*, 129 Va. 183, 201–05 (1921))); *Hop-In Food Stores v. Serv-N-Save*, 247 Va. 187, 193 (1994) ("There may be no recovery for loss of future profits when it is uncertain that there would have been any profits at all." (citing *Murray v. Hadid*, 238 Va. 722, 731 (1989))); *Adams, Payne & Gleaves, Inc. v. Indiana Wood Preserving Co.*, 155 Va. 18, 30 (1930) (citing *Bristol Belt Line Ry. v. Bullock Elec. Mfg. Co.*, 101 Va. 652 (1903)) (holding that damages cannot be based simply on gross revenues). These fundamentals were readdressed and affirmed by the Supreme Court in *Isle of Wight County. v. Nogiec*, 281 Va. 140, 148 (2011).

Under the above authorities, damages for loss of profits resulting from a breach of contract or independent tort must be proved to a degree of reasonable certainty. Because plaintiff did not present evidence of lost profits, but only of gross revenues, the issue remains as to whether this evidence is sufficient to support an award of damages, setting aside the legal particulars of each count for the time being.

As stated in *Nogiec*, an essential element of this action at law for damages is the presentation of evidence that would allow the fact finder to ascertain with reasonable certainty the amount of damages: "[T]he plaintiff below . . . had the 'burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery'." *Id.* at 147 (quoting *Farrar*, 277 Va.

at 554 (quoting *Shepherd v. Davis*, 265 Va. 108, 125 (2003))). "Damages based on uncertainties, contingencies, or speculation cannot be recovered." *Id.* (quoting *Shepherd*, 265 Va. at 125). Indeed, "[t]he failure to establish damages with reasonable certainty warrants the dismissal of a breach of contract claim." *Id.* (citing *Sunrise Continuing Care, L.L.C. v. Wright*, 277 Va. 148, 156 (2009)).

The proof offered in the instant case was not only based on projected gross revenues but was also founded on the assumption that the business required by the respective dealers from Integrity would be the same and that the plaintiff's overhead would not increase. The evidence showed Integrity recognized that the recession had an effect on business generally, requiring the company to reduce hours, employees, and take additional cost-cutting measures. It was also revealed that the same dealers sometimes use more than one vendor for the work Integrity performs and that during the winter months, work slows appreciably.

The Court cannot assume that the dealers would have continued to use Integrity after termination of the defendant when the unwritten policy of a transition period existed precisely to enhance the probability of client retention. Further, there was no evidence from any of the four dealerships for whom the defendant performed work that (1) their level of demand in the ensuing years would be the same, (2) Integrity would obtain 100% of this future business, (3) the dealers would be willing to pay the same amount for the services, or (4) Integrity's overhead would remain constant.

Therefore, while plaintiff presented evidence regarding gross sales revenues, Integrity admittedly "never articulated a lost profits analysis associated with anything done by Mr. Meyer." Even assuming plaintiff did present the "missing" evidence described in the preceding paragraphs, the lack of lost profits analysis is fatal to all counts; without proof of ascertainable damages, there can be no recovery. *See, e.g., Laburnum Constr. Corp.*, 194 Va. at 887. Without such analysis, there is no proper measure of recovery by plaintiff upon any count, even had the plaintiff established a right of recovery otherwise.

## III. *Conclusion*

Consequently, the Court rules that the plaintiff has failed to establish through the presentation of evidence a right of recovery for any of the four counts alleged in the complaint. Even if plaintiff had established any cause of action, Integrity's evidence of damages was insufficient to warrant recovery for any count.