Present:  All the Justices

JONATHAN PEREL, AS TRUSTEE FOR THE
BALLYSHANNON TRUST, ET AL.

v.  Record No. 031291     OPINION BY JUSTICE DONALD W. LEMONS
                                     April 23, 2004
SCOTT BRANNAN, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

In this appeal, we consider the enforcement of certain restrictive covenants applying to a lot in a residential subdivision, and the remedies for breach of these covenants.

I.  Facts and Proceedings Below

In 1998, Locke Lane, L.C. ("Locke Lane") purchased a tract of land from the Science Museum of Virginia Foundation, Inc. and Science Museum Foundation Real Estate, L.L.C. (collectively, the "Science Museum") for the purpose of developing a residential subdivision named "River Locke."  In the summer of 1998, Locke Lane and the Science Museum jointly requested a special use permit and approval of a subdivision plan from the Richmond City Council.  The plan met with opposition from Jonathan S. Perel ("Perel"), the sole trustee of the Ballyshannon Trust ("the trust"), which owned a parcel of land adjacent to the proposed subdivision.

In November 1998, the Science Museum, Locke Lane, and Perel, as trustee for the Ballyshannon trust, entered into a Settlement Agreement.  Under the Settlement Agreement, Perel

agreed not to object to or contest the approval by the City of the special use permit or subdivision plan. In return, the Science Museum and Locke Lane agreed to certain restrictive covenants running with the land on River Locke lots abutting the trust's property. The restrictive covenants are contained in a properly recorded document titled, "Amended and Restated Declaration of Rights, Restrictions, Affirmative Obligations and Conditions Applicable to All Property in River Locke" (the "Declaration"). Locke Lane also agreed "to sell Lot 4 of River Locke Subdivision . . . to Perel, or such entity or person as he may designate by assignment or otherwise." River Locke Lot, L.L.C., now owns Lot 4.

Part V of the Declaration contains covenants restricting the permissible location and type of buildings in River Locke. Part V, paragraph 1(c) describes the buffer, setback, and "[n]o [b]uilding [a]reas" that are part of each lot and restricts the actions that are permissible within each area. Part VII makes clear that the covenants and other provisions of the Declaration run with the land.

Part I, paragraph 9 of the Declaration establishes an Architectural Review Committee ("ARC") composed of three members. The ARC is granted the authority to "waive compliance with the provisions contained herein which are subject to architectural review (except with respect to Part

2

V, subparagraphs 1(c) and (d) and Part VI, paragraph 1) when such waiver is reasonably necessary . . . or where no other reasonable alternative is acceptable."  According to Part I, paragraph 1, a property in River Locke owner must have his or her plans for improvements approved by the ARC before construction may begin.

In December 1999, William S. "Scott" Brannan and Melissa Brannan ("the Brannans") purchased "Lot 1" in the River Locke subdivision.  On June 28, 2000, Scott Brannan submitted a site plan for Lot 1 to the ARC and it was approved on July 12, 2000.  The ARC approved a separate landscape plan for Lot 1 on September 24, 2001.

Construction began on the Brannan home in the summer of 2000, shortly after the ARC's approval of the site plan.  Due to the slope of the site and the location of some rock outcroppings, excavation was required for construction of the house the Brannans had chosen to build.  The excavation removed part of the hillside on the rear portion of the lot and cut into the designated setback and buffer areas. Substantial vegetation and eight large trees were also removed from the buffer area.  A retaining wall was then constructed in the setback area to stabilize the remaining soil.  Between the back of the house and the retaining wall, the Brannans installed a patio.  A covered porch extended from one corner

of the house into the setback area but was altered just before trial to remedy the encroachment.

Perel and River Locke Lot, L.L.C. (collectively, "Perel") filed an amended bill of complaint against the Brannans, Locke Lane, and the three members of the ARC, in their individual capacities,[1] on March 15, 2002, alleging that the Brannans' porch and retaining wall encroached on the setback area of Lot 1 in violation of the covenants and that the excavation and removal of vegetation performed by the Brannans also violated the covenants.  Perel asked the trial court for an injunction preventing the Brannans from further encroachment on the buffer and setback areas; an order requiring the Brannans to restore the buffer and setback areas "to their prior state;" and an "order that the Brannans must modify their rear porch."

In the same amended bill of complaint, Perel accused Locke Lane of breaching "its contractual obligation to enforce the covenants, conditions, and restrictions contained in the Settlement Agreement and the Amended Declaration."  He asked the court to order Locke Lane to enforce the covenants against the Brannans.  Perel also asked for compensatory damages against the Brannans and Locke Lane but withdrew the request

---

[1] The ARC members successfully demurred and have been dismissed from the suit.

shortly before trial. All parties eventually sought attorneys' fees.

Three days before trial, the Brannans sought to amend their response to a request for admissions submitted by Perel three months earlier and completed by the Brannans three weeks after the request was submitted. In their response to the request for admissions, the Brannans admitted "that they caused eight trees to be removed from the Lot 1 Buffer before August 20, 2001 after receiving approval from the ARC to do so." The Brannans moved the trial court to permit them to change their response to deny that they had caused eight trees to be removed from the buffer area, characterizing their original admission as "inadvertent." The trial court denied the Brannans' motion.

Following a bench trial, the trial court found that the Brannans had violated the covenants by removing "the eight trees and other vegetation from the buffer area" and constructing a below-grade patio in the setback area. However, the trial court found that the Brannans' excavation on Lot 1 and construction of the retaining wall did not violate the covenants. The trial court denied both parties' requests for attorneys' fees; ordered the Brannans to replace the vegetation that had been removed, except the eight large trees, because of feasibility concerns; and ordered the

5

Brannans "to remove the patio and any other improvements in the setback area."

Perel appeals the adverse judgment of the trial court, assigning error to: the trial court's holding that the retaining walls do not violate the covenants; the trial court's refusal to order the Brannans to replace the eight trees that were removed; the trial court's holding that Locke Lane has no contractual duty to enforce the covenants; and the trial court's denial of attorneys' fees. The Brannans and Locke Lane responded with five assignments of cross-error, assigning error to: the trial court's refusal to permit them to amend their response to Perel's request for admissions; the trial court's order requiring removal of the patio; the trial court's finding that the patio breached the covenants; the trial court's failure to give the approval of the Brannans' plans by the ARC sufficient weight in its decision; and the trial court's rejection of the argument that Perel was precluded from receiving equitable relief under the "unclean hands" doctrine.

## II. Standard of Review

The trial court's judgment in this case involves both findings of fact and conclusions of law. As to purely factual determinations made by the trial court, we will not disturb those findings unless they are plainly wrong or without

6

evidence to support them.  However, we review the trial court's interpretation of covenants and other written documents de novo.  See Wilson v. Holyfield, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984).

### III. Analysis

#### A.  Removal of the Retaining Wall

In its letter opinion, the trial court held that "[t]he retaining wall was a necessary adjunct to the permitted excavation to prevent the collapse of the soil and rock which remained after the cut was complete," apparently holding that necessity is an exception to the restrictions on development in the setback area enumerated in the Declaration.  The trial court also noted, "[p]arenthetically, should the excavation have been determined to violate the covenants, there is no evidence on which the court could prepare an enforceable order that the excavated area be returned to its pre-excavation state" implying that even if the retaining wall was a violation of the covenants, the trial court would not order removal of the wall.

The Brannans concede that the retaining wall lies in the rear and side setback areas of Lot 1.  Part V, paragraph 1(c) of the Declaration states in part:

> No building, structures or other improvements other than a fence or a driveway . . . may be permanently or temporarily

> constructed or erected in any buffer area or rear building setback area . . . except as follows:
>
> . . . .
>
> (ii) <u>Rear and Side Yard Setback Areas</u>. Within the portion of the rear and side yard setback areas outside of the buffer areas on the Restricted Lots, clearing, at grade patios and walkways are permitted, and children's play equipment and swing sets, properly screened so as not to be visible from contiguous property presently owned by the Adjoining Owner, are permitted.

Walls of any type are absent from the list of permitted structures and improvements. We conclude that no walls are permitted in the setback areas for any reason and the retaining wall erected by the Brannans, therefore, violates the covenants. The language in Part V, paragraph 1(c)(i) of the Declaration, permitting "privacy fences or walls" in buffer areas, cannot save the Brannans' retaining wall because that language does not apply to the setback area.

While the retaining wall is clearly in violation of the covenants, Perel is not automatically entitled to have the retaining wall removed. When parties have a dispute over an alleged violation of a restrictive covenant, the plaintiff, or covenantee, may file suit in the court for equitable enforcement of the restrictive covenant. A restrictive covenant may be enforced by injunctive relief or through specific performance. The party seeking enforcement of the

8

restrictive covenant bears the burden of proving the validity and meaning of the covenant.  Mid-State Equipment Co. v. Bell, 217 Va. 133, 140, 225 S.E.2d 877, 884 (1976); Sonoma Development, Inc. v. Miller, 258 Va. 163, 167-69, 515 S.E.2d 577, 579-81 (1999).  The party seeking enforcement must also establish that the restrictive covenant has been violated by the acts of the defendant, Hening v. Maynard, 227 Va. 113, 117, 313 S.E.2d 379, 381 (1984); Forbes v. Schaefer, 226 Va. 391, 400, 310 S.E.2d 457, 463 (1983), and request a remedy.

Once the plaintiff satisfies proof requirements, he or she is entitled to the remedy requested unless the defendant can establish one of several defenses or the court finds enforcement unusually difficult.  See Bond v. Crawford, 193 Va. 437, 444, 69 S.E.2d 470, 475 (1952) ("Generally, where a contract respecting real property is in its nature and circumstances unobjectionable, it is as much a matter of course for courts of equity to decree specific performance of it, as it is for a court of law to give damages for a breach of it."); Spilling v. Hutcheson, 111 Va. 179, 183, 68 S.E. 250, 252 (1910) ("The injunction in this case is granted almost as a matter of course upon a breach of the covenant. The amount of damages, and even the fact that the plaintiff has sustained any pecuniary damages, are wholly immaterial.").

9

A defendant may avoid imposition of the remedy requested if such a remedy would create a hardship or injustice that is out of proportion to the relief sought,[2] if performance by the defendant would be impossible,[3] or if the enforcement of the decree would be unusually difficult for the court.[4]  However, on the questions of hardship, injustice, or impossibility, the defendant bears the burden of proving the elements of the defense.  See Harper v. Virginian Ry., 86 S.E. 919, 922 (W. Va. 1915) ("In suits to enforce specific performance of a contract like the one involved here it is for the defendant to show by way of defense that it is no longer able to perform the covenant consistently with its duty to the public in general, or that performance thereof will be burdensome and oppressive or otherwise inequitable.").

In order to establish the hardship defense, a defendant must show that specific performance would create a hardship or injustice that is out of proportion to the relief sought. Spinger v. Gaddy, 172 Va. 533, 541, 2 S.E.2d 355, 358 (1939); Cheatham v. Taylor, 148 Va. 26, 39, 138 S.E. 545, 549 (1927). The defendant must prove a level of hardship beyond

---

[2] Springer v. Gaddy, 172 Va. 533, 541, 2 S.E.2d 355, 358 (1939); Cheatham v. Taylor, 148 Va. 26, 39, 138 S.E. 545, 549 (1927).
[3] Shepherd v. Colton, 237 Va. 537, 541, 378 S.E.2d 828, 830 (1989); Jones v. Tunis, 99 Va. 220, 222, 37 S.E. 841, 841 (1901).

"inconvenience." Spilling, 111 Va. at 182, 68 S.E. at 251.
It is not enough for the defendant to show merely that the
loss to the defendant will be disproportionate to the benefit
to the plaintiff, where the defendant's violation of a
restrictive covenant "was made with full knowledge and
understanding of the consequences" of his or her actions.
Sonoma, 258 Va. 169-70, 515 S.E.2d at 581. Where an assignee
of the covenantor does not have actual or constructive notice
of the covenant, a lesser showing of hardship may be
acceptable. See Springer, 172 Va. at 541, 2 S.E.2d at 358;
Sonoma, 258 Va. 169-70, 515 S.E.2d at 581.

Impossibility is also a defense to specific performance
or injunctive relief requested. Fishburne v. Ferguson, 85 Va.
321, 328, 7 S.E. 361, 364-65 (1888). It may be a defense even
when the defendant "intentionally rendered himself unable to
perform the contract." Jones v. Tunis, 99 Va. 220, 222, 37
S.E. 841, 841 (1901).

Similarly, a requested remedy may be denied if it is
impossible for the court to precisely define the specific
actions to be performed or if the decree would necessarily be
of the type whose enforcement would "unreasonably tax the
time, attention and resources of the court." John Norton
Pomeroy, Pomeroy on Specific Performance of Contracts § 307,

---

[4] See, e.g., Rayner v. Stone, 2 Eden 128, 130 (1762).

11

at 393 (2d ed. 1897). See also Flint v. Brandon, 32 Eng. Rep. 314 (1803) (dismissing a bill seeking specific performance of a covenant to fill a pit formerly used for digging gravel partly out of concern that "if a specific performance is decreed, a question may arise, whether the work is sufficiently performed.").

In this case, the Brannans' construction of a retaining wall in the rear setback area of Lot 1 violated the restrictive covenants intended to benefit Perel. Perel has satisfied his burden of proving a violation of the covenants and has requested certain relief. Therefore, it is the Brannans' burden to prove, by their evidence, defenses to the remedy requested. Of course, the court may disapprove of the remedy requested because of difficulty in enforcement.

The trial court erred in holding that the retaining wall did not violate the covenant. This matter will be remanded to the trial court for further evidentiary proceedings in accordance with the proof requirements set forth above.

### B. Tree Removal

The Brannans maintain that despite their admissions, the trial court erred in concluding that the removal of eight large trees from the buffer zone was a violation of the covenants because the ARC approved their site and landscape plans, including the removal of the trees, in good faith.

12

Part V, paragraph (1)(c)(i) of the Declaration states: "Notwithstanding anything in Section 1 of Part II to the contrary, all existing vegetation and trees within the buffer areas shall be preserved, except that dead, fallen or diseased vegetation or trees may be removed and may be replaced and supplemental plantings shall be permitted therein." Part I, paragraph 9 states: "The Architectural Review Committee shall be charged with making all interpretations, determinations and necessary approvals under Paragraph 1 of Part I, Paragraph 1 of Part II, and all of Part V . . . (b) The Architectural Review Committee shall have the power to waive compliance with the provisions contained herein which are subject to architectural review (except with respect to Part V, subparagraphs 1(c) and (d) and Part VI, paragraph 1) when such waiver is reasonably necessary." (emphasis added).

The language from Part V of the Declaration is clear. No trees or other vegetation are to be removed from the buffer area unless dead, fallen, or diseased. There was no allegation that any of the trees removed were dead, fallen, or diseased. Therefore, the trial court properly found that the removal of the trees and other vegetation violated the covenants.

Despite finding that the removal of the trees was a violation of the covenants, the trial court declined to order

13

the Brannans to replace those trees with similar trees because Perel had not produced evidence to show that eight 80- to 100-foot trees could be successfully replanted in the buffer area. As previously discussed, it is the Brannans' burden to prove defenses to the relief requested. As previously stated, those defenses may include hardship or injustice, impossibility, or difficulty of enforcement by the court. Therefore, we will vacate that portion of the trial court's order denying replacement of the trees and remand the issue to the trial court for further proceedings and receipt of evidence.

C.  Locke Lane and the Duty to Enforce the Covenants

Perel claims that the trial court ignored language in the Settlement Agreement when it dismissed the claims against Locke Lane in its final order. Perel argues that paragraph 3 of the Settlement Agreement imposes a duty on Locke Lane to enforce the covenants when it states that, "[i]mpermissible deviations [from the norms of uniform treatment of lots and lot owners] would, for example, be . . . the developer unilaterally modifying or arbitrarily enforcing and/or failing to carry out or enforce the [covenants] or by-laws once approved."

There are two flaws in Perel's argument. First, the Declaration, containing the covenants, limits Locke Lane's power of enforcement. The only enforcement power given to

14

Locke Lane, by Part VI, paragraph 2(f), is the power to levy assessments against a property owner for failure to clean and paint the exterior of the house; failure to maintain the landscape; failure to complete the construction of a house in eighteen months or less; and failure to follow guidelines, rules, or regulations imposed by Locke Lane or the homeowners' association. The covenants violated in this case do not fall under the types of actions that Locke Lane may remedy by assessment.

Second, the Declaration specifically notes that if the covenants are violated, "[Locke Lane] . . . and any Property Owner shall have the right to proceed at law or in equity to compel compliance with the terms hereof or to prevent the violation or breach." Having the right to sue a violator is not the equivalent of having a duty to enforce the covenants against a violator. The trial court did not err in holding that Locke Lane had no legal duty to enforce the covenants against the Brannans.

## D. Attorneys' Fees

Perel argues that the trial court erred in denying River Locke Lot, L.L.C., attorneys' fees under the Property Owners' Association Act, Code §§ 55-508 through -516.2. Perel did not properly plead that the property in question was subject to the Property Owners' Association Act or that he was entitled

15

to attorneys' fees under the Act.  Accordingly, the trial court did not err in refusing to award the fees requested by Perel.

E.  Motion to Amend Response to Request for Admissions

The trial court found, based on the Brannans' response to Perel's request for admissions, that the Brannans had removed eight large trees and other vegetation from the buffer area, which violated the covenants' restrictions on activities in the buffer area.  The Brannans had moved the court to allow them to amend their response to Perel's request for admissions to deny that the trees removed had been in the buffer area. The trial court overruled their motion because it "comes too late" and was "prejudicial to the plaintiff."

Rule 4:11(b) of the Rules of the Supreme Court of Virginia states that "the court _may_ permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits."  (emphasis added).  The permissive word "may" makes the court's decision on the issue discretionary.  We, therefore, examine the trial court's decision not to grant permission to amend the response under

an abuse of discretion standard.  See Shaheen v. County of Mathews, 265 Va. 462, 475, 579 S.E.2d 162, 170 (2003).

Rule 4:11(b) creates a two-prong test within which the trial court must exercise its discretion.  Shaheen, 265 Va. at 473-74, 579 S.E.2d at 169.  Here, the trial court based its decision on the second prong of the test, which "requires the non-moving party to demonstrate that amendment or withdrawal of an admission will prejudice that party."  Id. at 474, 579 S.E.2d at 170.  The requisite prejudice may occur "because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions."  Id.  Perel argued to the trial court that the Brannans' motion to amend came only three days before trial and that he had not prepared to prove the location of the trees at trial.  In light of these arguments, the trial court did not abuse its discretion in denying the Brannans' motion as prejudicial to Perel.

## F.  The Patio

It is well-established that courts may address only those issues properly pled.  Rule 1:4; Ted Lansing Supply Co. v. Royal Alum. & Construction Co., 221 Va. 1139, 1141, 277 S.E.2d 228, 229 (1981).  In this case, Perel never mentioned the Brannans' patio in his amended bill of complaint.  Accordingly, the trial court's order requiring the Brannans to remove the patio will be reversed.

17

The Brannans maintain that, because the ARC approved their landscape and site plans, they did not violate the covenants by building a retaining wall in the setback area or by removing the eight large trees from the buffer area. The Brannans argue that if the trial court had shown proper deference to the ARC's interpretations of the covenants, it could not have found that their actions violated the covenants. They point to Part I, paragraph 9 of the Declaration as granting the ARC authority to make "all interpretations, determinations and necessary approvals under Paragraph 1 of Part I, Paragraph 1 of Part II, and all of Part V." However, according to Part I, paragraph 9(b) of the Declaration, the ARC may not waive compliance with Part V, paragraph 1(c) of the Declaration, which expresses the restrictions on activity in the setback and buffer areas.

The ARC's approval of the Brannans' plans did not state the ARC's reasons for granting approval of the plans. If the ARC approved the plans because it decided to waive the requirements of Part V, paragraph 1(c) of the Declaration, its decision is not entitled to deference because it did not have the authority under the covenants to waive those requirements. If the ARC approved the plans because it interpreted Part V,

paragraph 1(c) of the Declaration to allow the Brannans' construction of the retaining wall and removal of the trees, its interpretation was contradictory to the plain language of the covenants. Even when an entity's interpretation of a document is entitled to deference, an interpretation of the document that is contrary to the plain language of the document may be properly rejected by the court. Virginia High Sch. League v. J.J. Kelly High Sch., 254 Va. 528, 531, 493 S.E.2d 362, 363-64 (1997) ("[W]hen bylaw language is unambiguous, we need not defer to an interpretation of a corporation's various boards and committees."). The trial court did not err in finding that the Brannans violated the covenants by building a retaining wall in the setback area and removing trees from the buffer area, despite the ARC's approval of such actions.

### H. Unclean Hands Doctrine

The Brannans maintain that Perel is barred from seeking any equitable remedy for any violations of the covenants committed by the Brannans under the "unclean hands" doctrine. In Richards v. Musselman, 221 Va. 181, 187, 267 S.E.2d 164, 168 (1980), we stated:

> [T]he maxim that a party must come into a court
> of equity with clean hands only applies to the
> particular transaction under consideration, for
> a court will not go outside of the case for the
> purpose of examining the conduct of the

19

> complainant in other matters or questioning his
> general character for fair dealing. The wrong
> must have been done to the defendant himself
> and must have been in regard to the matter in
> litigation.

Id. (internal quotation mark omitted). Here, Perel's alleged "unclean" act was trespass upon the Brannans' property for the purpose of taking photographs. Perel's alleged trespass is not part of the "particular transaction under consideration" here because it could not have encouraged, invited, aided, compounded, or fraudulently induced the Brannans' violation of the covenants. Whether or not Perel's alleged trespass was proper, it does not bar him from seeking equitable relief in this case.

## IV. Conclusion

For the reasons stated, we hold that:

1. The trial court erred in its judgment that the retaining walls did not violate the covenants;

2. The trial court erred in its judgment, without evidence to support it, that replacement of the eight trees was not feasible;

3. The trial court did not err in its judgment that Locke Lane has no contractual duty to enforce the covenants at issue;

20

4. The trial court did not err in refusing to award attorneys' fees and costs to Perel under the Property Owners' Association Act;

5. The trial court did not err in refusing to permit the Brannans to amend their response to Perel's request for admissions;

6. The trial court erred by ordering relief that was not pled, namely that the Brannans' must remove the patio;

7. The trial court did not err in its consideration of the Architectural Review Committee's approval of the Brannans plans nor in refusing the Brannans' defense of "unclean hands."

This case is remanded to the trial court for proceedings including receipt of evidence concerning the remedy requested by Perel for the encroachment of the retaining walls and the removal of eight large trees.

Affirmed in part,
reversed in part,
and remanded.

21