Present:  All the Justices

SALVATORE CANGIANO

v.  Record Nos.  050699 and
                051031
                            OPINION BY JUSTICE DONALD W. LEMONS
                JANUARY 13, 2006

LSH BUILDING COMPANY, L.L.C.

            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                    Michael C. Allen, Judge

    In these appeals, we consider whether the trial court

erred in granting specific performance of a real estate

purchase agreement and awarding attorney's fees.  For the

reasons discussed below, we will affirm the judgment of the

trial court in both appeals.

                I.  Facts and Proceedings Below

    On August 20, 2003, LSH Building Company, L.L.C. ("LSH")

and Salvatore Cangiano ("Cangiano") signed a "Purchase

Agreement" wherein Cangiano agreed to sell an approximately

1,898-acre tract of land known as Lower Magnolia Green in

Chesterfield County to LSH for 39 million dollars.  LSH

planned to develop Lower Magnolia Green by constructing 2,370

single-family units, 1,180 multi-family units, a golf course,

and a 212-acre commercial center.

    As part of the "Warranties of Seller" in the Purchase

Agreement, Cangiano warranted and represented "to the best of

his knowledge and belief" in Paragraph 15(h) that he will have

                            1

purchased/settled on all additional land and easements required for all offsite utilities, road widenings, turn lanes and any other offsite improvements required of this project. All land and easements to be transferred to [LSH] at 'settlement.'

In the event of default by Cangiano, Cangiano agreed in Paragraph 18 of the Purchase Agreement that

> [LSH] shall be entitled to all remedies available to [LSH] at law or in equity, including specific performance, all of such remedies shall be cumulative and not exclusive of each other.  Further[,] in the event of default hereunder, the defaulting party shall be liable for all costs incurred by the non-defaulting party in enforcing this Agreement through court action or otherwise, including a reasonable attorney's fee.

After entering into the Purchase Agreement, a dispute arose between Cangiano and LSH concerning the number of easements Cangiano was required to acquire and convey to LSH pursuant to Cangiano's "Warranties of Seller."  Cangiano contended that he agreed only to acquire and convey easements necessary for the development of an initial phase consisting of 200 lots.  Cangiano then informed LSH that he was declaring their agreement null and void because LSH failed to provide, pursuant to Paragraph 16 of the Purchase Agreement, "proof of ability to perform financing."

LSH filed a bill of complaint seeking declaratory judgment, specific performance, damages resulting from breach of contract, and attorney's fees and costs pursuant to Paragraph 18 of the Purchase Agreement. Prior to trial, LSH withdrew its claim for breach of contract and the case proceeded on LSH's claims for declaratory judgment, specific performance, and attorney's fees and costs. The parties agreed, and obtained the approval of the trial court, to bifurcate the issues and try LSH's claims for declaratory judgment and specific performance, and then try LSH's claims for attorney's fees and costs post-trial, if necessary. See Lee v. Mulford, 269 Va. 562, 567-68, 611 S.E.2d 349, 352 (2005).

During its opening statement to the trial court, LSH framed the issues before the trial court as follows:

> We believe the evidence will show that LSH is entitled to a declaratory judgment, that the contract is in full force and effect, and that Mr. Cangiano is obligated to perform his obligations under the contract, including his obligation to not only convey the property, but to convey additional property and easements, if necessary, for the development of the property. LSH is also entitled, we submit, to a decree of specific performance requiring Mr. Cangiano to specifically perform his obligations.

During Cangiano's opening statement to the trial court, he maintained that LSH failed to provide proof of financing, and raised for the first time his contention that the Purchase

3

Agreement was unenforceable because there was neither a meeting of the minds nor an offer and acceptance:

> And I believe not only is the contract void, it never really was in fruition, but there was never a meeting of the minds; there was never a true offer and acceptance because of the difference of the attachments with this contract; and that the contract should fail, and that the [parties] should go their own ways.

LSH objected to this change in position and argued that Cangiano had conceded that the Purchase Agreement was valid in Cangiano's answer and interrogatory responses.

After the presentation of evidence, LSH restated its request for declaratory judgment and specific performance. Cangiano responded:

> So for all of those reasons, I don't believe this contract can stand. I believe that we are in equity here. They are asking for specific performance. I honestly don't know, if the Court feels this contract should be specifically performed, how many years it is going to take to get these easements and if they are going to be happy with the easements because . . . it's a changing situation.

Continuing, Cangiano concluded, "So for those reasons, I would ask that this contract be held to be unenforceable . . . . And I would ask that the plaintiff not be granted their relief . . . ."

In announcing its ruling, the trial court held that Cangiano was bound by his statements in his answer and

4

interrogatory responses that the Purchase Agreement was a valid contract. The trial court then held that the Purchase Agreement was unambiguous and granted declaratory judgment in favor of LSH and decreed specific performance. The trial court stated: "The Court's decision grants complete relief to the plaintiff as requested in the bill of complaint . . . ."

The trial court instructed the attorneys for LSH to prepare the final decree and circulate it to the attorney for Cangiano. Subsequently, Cangiano obtained new counsel. Prior to the post-trial hearing on attorney's fees, a dispute arose concerning the wording of the final decree. Cangiano objected to the language employed by LSH in the draft version of the final decree, contending for the first time in the course of the litigation that LSH sought to have the trial court order Cangiano to perform "the impossible." Cangiano asked the trial court, referring to the language used in Paragraph 15(h) of the Purchase Agreement, to require him only to use his "best efforts" to obtain the additional easements. While LSH agreed to the insertion of Cangiano's "best efforts" language in the final decree, LSH objected to Cangiano's attempt to raise, for the first time and after the conclusion of the trial, the defense of impossibility. At the conclusion of the hearing, the trial court took the matter under advisement.

Upon further consideration of the briefs submitted by the parties, the trial court entered its final decree granting LSH's request for declaratory judgment and specific performance. The trial court held that LSH did not breach the Purchase Agreement, that Cangiano did not properly terminate the Purchase Agreement according to its terms, and that LSH "did provide sufficient proof of ability to perform financing." The final decree also ordered Cangiano

> to use his best efforts to specifically perform
> his obligations under the Purchase Agreement,
> including but not limited to his obligation
> under [Paragraph] 15(h) of the Purchase
> Agreement to use his best efforts to acquire
> and convey at closing all additional land and
> easements required for all offsite utilities,
> road widenings, turn lanes, and any other
> offsite improvements required to develop the
> entire property being conveyed under the
> Purchase Agreement, time being of the essence.

On February 4, 2005, the trial court held a hearing on LSH's request for attorney's fees and costs pursuant to Paragraph 18 of the Purchase Agreement. Cangiano acknowledged that LSH "won" at trial, but argued that LSH's fees were unreasonable and that they should be no more than $120,000.00, double the attorney's fees Cangiano incurred. The trial court disagreed. In announcing its ruling, the trial court stated:

> [I have] considered the fee application with
> reference to the language in the default
> provisions in the contract and based on any
> considerations that I believe I am obligated to
> take into account in making this determination.

6

> Those, I think, have been identified by the
> parties and include time and effort to have
> been expended, the nature of the services, the
> nature of the case, the complexity of the case,
> the value of the services to the client, the
> results, the skill and experience brought there
> by the attorneys involved, and the question of
> whether the rates charged were consistent with
> the rendering of similar services in the
> context of this area or this market.
>
> In considering all of those circumstances,
> taking into account the arguments that have
> been adduced this morning, the [trial court]
> concludes that [LSH's] attorneys' fees are
> reasonable and cannot be categorized as
> unreasonable and will grant [LSH's] motion.

Pursuant to Paragraph 18 of the Purchase Agreement, the trial court awarded LSH $258,256.26 in attorney's fees and costs: $235,679.26 for those incurred in litigating the underlying dispute and $22,577.00 for its post-trial "Motion for Award of Attorneys' Fees and Costs."

Cangiano filed two appeals, which we granted.  Cangiano maintains the trial court "erred in granting specific performance requiring the seller to convey what he did not own" and "erred in granting specific performance of a contract provision which was not an affirmative duty but rather a representation of current conditions, made 'to the best of [the seller's] knowledge and belief.' "  Cangiano further argues that the trial court erred:

> (1) "in granting attorney's fees to LSH under a
>
> contractual provision that required a 'default

7

hereunder,' where no party was in default or determined by the trial court to be in default";

(2) "in granting attorney's fees to LSH pending Cangiano's timely appeal from the declaratory judgment";

(3) "in awarding fees at the unreasonable level of 400% of the fees incurred by the opposing side for the same litigation, where the contractual provision was only for 'reasonable' attorney's fees";

(4) "in awarding LSH's attorney's fees for post-trial briefing and hearings, at which post-trial proceedings LSH did not prevail"; and

(5) "in awarding LSH's attorney's fees for post-trial briefing and hearings, where the parties' contract provided for attorney's fees only with respect to the enforcement of the duties in the Purchase Agreement and does not allow for such compound recovery of attorney's fees."

## II. Analysis

### A. Standard of Review

"[T]he decision whether to award specific performance of a contract rests in the sound discretion of a trial court; it is not a matter of right." Shepherd v. Davis, 265 Va. 108, 124, 574 S.E.2d 514, 523 (2003); see also Walker v. Henderson, 151 Va. 913, 927-28, 145 S.E. 311, 315 (1928). Specific

8

performance "may be granted or refused under established equitable principles and the facts of a particular case. The chancellor's discretion must be exercised with a view to the substantial justice of the case." Chesapeake Builders v. Lee, 254 Va. 294, 300, 492 S.E.2d 141, 145 (1997) (citations omitted).

Likewise, the amount of recoverable attorney's fees rests within the sound discretion of the trial court. Coady v. Strategic Resources, Inc., 258 Va. 12, 18, 515 S.E.2d 273, 276 (1999) (citing Ingram v. Ingram, 217 Va. 27, 29, 225 S.E.2d 362, 364 (1976)). As a general rule, " 'absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant.' " Mulford, 269 Va. at 565, 611 S.E.2d at 350 (quoting Mullins v. Richlands Nat'l Bank, 241 Va. 447, 449, 403 S.E.2d 334, 335 (1991)). While expert testimony may be necessary to assist the fact finder in determining an award of attorney's fees, such testimony is not required in every case. Mulford, 269 Va. at 565, 611 S.E.2d at 350-51 (citations omitted).

The trial court's interpretation of written documents like the Purchase Agreement involved in this case is reviewed de novo. VEPCO v. Northern Va. Regional Park Auth., 270 Va.

309, 315-16, 618 S.E.2d 323, 326 (2005); <u>Perel v. Brannan</u>, 267 Va. 691,698, 594 S.E.2d 899, 903 (2004).

### B.   Specific Performance

In the course of this litigation, Cangiano has taken at least four different positions regarding the interpretation of the Purchase Agreement and its potential enforcement.  First, during the pre-trial phase, Cangiano admitted in his answer that he entered into the Purchase Agreement, which the trial court characterized as a valid contract, but argued that the Purchase Agreement was terminated because LSH never furnished "proper proof of ability to perform financing."

Second, during the trial phase, in addition to his termination argument, Cangiano argued that the Purchase Agreement was ambiguous, inconsistent, and unenforceable. Cangiano ultimately asked the trial court to rule in his favor because he alleged there was no meeting of the minds and thus no contract.

Third, during the post-trial hearing to resolve the dispute as to the wording of the final decree, Cangiano argued for the first time that a party cannot be ordered to specifically perform an act that is "impossible."  It was during this hearing that Cangiano asked for the "best efforts" language to be included in the final decree.  LSH had no

objection to this language and it was incorporated by the trial court in the final decree.

Fourth and finally, Cangiano advances the arguments on appeal contained in his assignments of error now before the Court: (1) the trial court "erred in granting specific performance requiring the seller to convey what he did not own"; and (2) the trial court "erred in granting specific performance of a contract provision which was not an affirmative duty but rather a representation of current conditions, made 'to the best of [the seller's] knowledge and belief.'"

Simply stated, Cangiano's first assignment of error concerning the interpretation of the Purchase Agreement and its enforcement does not accurately state what the trial court ordered. The trial court ordered Cangiano to use his "best efforts" to acquire and convey the easements at issue. Cangiano is correct when he states that equity will not compel that which is impossible to perform. Here the trial court only required Cangiano's "best efforts" to perform. Cangiano's first assignment of error regarding specific performance is therefore without merit.

In his second assignment of error, Cangiano argues that the Purchase Agreement merely contained a "representation of current conditions" and that the trial court erred in

11

concluding that he was contractually obligated by the terms of the Purchase Agreement to obtain the additional easements. As already stated, on appeal we review a trial court's interpretation of a contract de novo. VEPCO, 270 Va. at 315-16, 618 S.E.2d at 326.

In its final decree granting declaratory judgment, the trial court stated:

> Under [Paragraph] 15(h) of the Purchase Agreement, [Cangiano] is obligated to use his best efforts [to] acquire and convey to [LSH] at closing all additional land and easements required for all offsite utilities, road widenings, turn lanes[,] and any other offsite improvements required to develop the entire tract of land being conveyed pursuant to the Purchase Agreement, time being of the essence.

In ordering Cangiano to specifically perform his contractual obligations, the trial court held that Cangiano must

> use his best efforts to specifically perform his obligations under the Purchase Agreement, including but not limited to his obligation under [Paragraph] 15(h) of the Purchase Agreement to use his best efforts to acquire and convey at closing all additional land and easements required for all offsite utilities, road widenings, turn lanes, and any other offsite improvements required to develop the entire property being conveyed under the Purchase Agreement, time being of the essence.

For two reasons, we agree with the judgment of the trial court.

First, Cangiano conceded below that Paragraph 15(h) of the Purchase Agreement affirmatively required him to obtain

12

additional easements – but maintained that he was required to obtain only those easements necessary to develop an initial phase consisting of 200 lots.  In this concession, Cangiano implicitly agreed that the language is that of contractual obligation.  He merely contested the scope of the obligation.  Additionally, Cangiano's own expert testified on direct examination that, while it would cost him as much as $850,000 and require 12 to 18 months, Cangiano could obtain the additional easements.  A party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory.  Nor may a party invite error and then attempt to take advantage of the situation created by his own wrong. Powell v. Commonwealth, 267 Va. 107, 144, 590 S.E.2d 537, 560 (2004); Cohn v. Knowledge Connections, Inc., 266 Va. 362, 367, 585 S.E.2d 578, 581 (2003); Smith v. Settle, 254 Va. 348, 354, 492 S.E.2d 427, 431 (1997); Leech v. Beasley, 203 Va. 955, 961-62, 128 S.E.2d 293, 297-98 (1962).

Second, a de novo review of the Purchase Agreement indicates that it unambiguously imposes upon Cangiano the affirmative obligation of using his best efforts to obtain the contested easements.  In Paragraph 15(h), as part of his "Warranties of Seller," Cangiano agreed that he

13

> will have purchased/settled on all additional
> land and easements required for all offsite
> utilities, road widenings, turn lanes and any
> other offsite improvements required of this
> project.  All land and easements to be
> transferred to [LSH] at "settlement."

Furthermore, at the conclusion of Paragraph 15, Cangiano

agreed that

> [i]n the event any of the representations,
> warranties, additional undertakings of Seller
> in this paragraph 15 and/or other
> responsibilities of the Seller, as set forth in
> this Agreement, are not accurate and cannot be
> or are not ratified or fulfilled prior to
> Settlement, then the Purchaser shall have the
> right at its sole option, to take any or none
> of the following actions:  (i) waive the
> inaccurate, unratified or unfulfilled
> representation, warranty, additional
> undertakings and/or responsibility of Seller,
> and proceed with Settlement hereunder,
> provided, however, that such waiver shall be in
> writing, or (ii) terminate this Agreement,
> whereupon all rights and responsibilities
> hereunder shall be null and void, and neither
> party shall have any further obligation
> hereunder, other than the obligation of Escrow
> Agent to return the Deposit, or (iii) have such
> other remedy as may be available to Purchaser
> at law or in equity.

Thus, it is clear from the plain and unambiguous language of

the Purchase Agreement that Cangiano agreed it was his duty to

"have purchased/settled on all additional land and easements"

required for the project.  This is reinforced by the

conclusion of Paragraph 15, which reflects that Cangiano

clearly understood that the Purchase Agreement obligated him

to perform "additional undertakings of Seller in this

14

paragraph 15."  In the event Cangiano failed to perform, LSH possessed the "right at its sole option" to take any or none of three options, one of which being "such other remedy as may be available to Purchaser at law or in equity."  Obviously, LSH's request for specific performance falls within this clause.

For these reasons, Cangiano's second assignment of error regarding specific performance is without merit.  As reflected in its decree, the trial court correctly concluded that the Purchase Agreement unambiguously imposes upon Cangiano the affirmative obligation of using his best efforts "to acquire and convey at closing all additional land and easements required for all offsite utilities, road widenings, turn lanes, and any other offsite improvements required to develop the entire property being conveyed under the Purchase Agreement, time being of the essence."

## C.  Attorney's Fees

Cangiano failed to argue below his first, second, and fifth assignments of error regarding the trial court's award of attorney's fees to LSH.  Because these arguments were not preserved below, Cangiano is barred by Rule 5:25 from raising them for the first time on appeal.

In his third assignment of error, Cangiano argues that LSH's fees incurred up to and including the trial were

15

unreasonable because they were 400% greater than those he incurred.  We do not agree.

In determining whether attorney's fees are reasonable,

> a fact finder may consider, inter alia, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate.

Chawla v. BurgerBusters, Inc., 255 Va. 616, 623, 499 S.E.2d 829, 833 (1998).  In reaching its conclusion, the trial court specifically considered these factors in awarding attorney's fees to LSH pursuant to Paragraph 18 of the Purchase Agreement.  In assessing the reasonableness of attorney's fees, the issue is not how the fees incurred by one party compare directly with those incurred by an opponent.  Instead, the issue is "whether the fees incurred were consistent with those generally charged for similar services" and "whether the services were necessary and appropriate."  Chawla, 255 Va. at 623, 499 S.E.2d at 833.  The trial court held that the fees requested by LSH were consistent with those generally charged for similar services, and necessary and appropriate.

In his fourth assignment of error, Cangiano argues that LSH should not receive attorney's fees for the post-trial hearing regarding the wording of the final decree granting

16

declaratory judgment and specific performance because LSH did not "prevail" at the hearing.  At the conclusion of the trial on LSH's bill of complaint for declaratory judgment and specific performance, the trial court held in favor of LSH and stated that its "decision grants complete relief to [LSH] as requested in the bill of complaint."  Paragraph 18 of the Purchase Agreement, which addresses the award of attorney's fees in this case, states in relevant part that "in the event of default hereunder, the defaulting party shall be liable for all costs incurred by the non-defaulting party in enforcing this Agreement through court action or otherwise, including a reasonable attorney's fee."

Clearly, LSH prevailed in its efforts to enforce the Purchase Agreement and at the post-trial hearing concerning the wording of the final order.  The issue is the "costs incurred" by LSH in enforcing the Purchase Agreement.  Cangiano takes the post-trial dispute regarding the wording of the final decree out of context.  Looking at the post-trial dispute in context, it is clear that LSH was the prevailing party at trial and Cangiano was therefore liable for "all costs" resulting from the necessity to seek judicial remedies in order to enforce the Purchase Agreement.

In his two assignments of error regarding the award of attorney's fees that were properly preserved below, Cangiano

17

does not demonstrate an abuse of discretion by the trial court in making its award of attorney's fees to LSH. Additionally, because the parties agreed in Paragraph 18 of the Purchase Agreement that "the defaulting party shall be liable for all costs incurred by the non-defaulting party in enforcing this Agreement through court action or otherwise, including a reasonable attorney's fee," we will remand these cases to the trial court for determination of an award of reasonable attorney's fees and costs incurred by LSH in the course of this appeal and upon remand.

## III.  Conclusion

The trial court did not abuse its discretion in ordering specific performance of the Purchase Agreement or in awarding LSH attorney's fees and costs pursuant to the terms of the Purchase Agreement. We will affirm the judgment of the trial court in both appeals and remand them for an additional award of reasonable attorney's fees and costs to LSH, pursuant to Paragraph 18 of the Purchase Agreement, incurred by LSH in defending its judgment on appeal and upon remand.

Record No. 050699 – <u>Affirmed and remanded</u>.
Record No. 051031 – <u>Affirmed and remanded</u>.

JUSTICE KOONTZ, dissenting.

I respectfully dissent. In my view, the chancellor erred, under the particular facts of this case, in fashioning

18

the award of specific performance so as to require the seller to use his "best efforts . . . to acquire and convey . . . all additional land and easements required for all offsite utilities, road widenings, turn lanes, and any other offsite improvements required to develop" the tract of land to be conveyed to the buyer.

Reduced to its essential context, this case arises from a purchase contract for a large tract of land for residential and commercial development. The buyer sought to have the land fully engineered at the time of closing and, thus, ready for the commencement of the intended development without the usual delays of obtaining the necessary offsite easements, such as water and sewer easements. The agreed purchase price included the anticipated costs for those easements. The seller agreed to acquire and convey those easements, but breached the contract by failing to do so within the time specified for closing the transaction, and that breach continued until the matter came before the chancellor on the buyer's request for an award of specific performance of the purchase contract.

The majority correctly acknowledges "that equity will not compel that which is impossible to perform," which in the applicable context of this case is merely another way of saying that equity will not require a seller to convey land which he does not own. See, e.g., Hawks v. Sparks, 204 Va.

717, 720, 133 S.E.2d 536, 539 (1963); see also Shepherd v. Colton, 237 Va. 537, 541, 378 S.E.2d 828, 830 (1989) (holding that "a court may not decree specific performance when it is impossible for a party to comply with a contractual condition."). The majority, however, resolves the issue here by noting that the chancellor merely required the seller to use his "best efforts" to acquire and convey the necessary easements contemplated by the parties' contract. That resolution leaves unresolved the merits of the issue.

There is no dispute that the "best efforts" limitation was adopted by the chancellor at the request of the seller, and that limitation facially would appear to support the chancellor's award of specific performance regarding the acquisition and conveyance of the land and easements in question. It takes little reflection, however, to reasonably conclude that "best efforts" is a requirement under the circumstances of this case that lacks certainty and portends future litigation before the chancellor and additional expense to the parties. Adjoining landowners may or may not be willing to convey their land or grant easements over their land so as to permit the seller to comply with the chancellor's order. The possible complications are practical and boundless. Such need not be the case. Specific performance should not be awarded where "enforcement of the

20

decree would be unusually difficult for the court." Perel v. Brannan, 267 Va. 691, 700, 594 S.E.2d 899, 904-05 (2004).

"Generally, when there is a deficiency in title, quantity, or quality of an estate, the purchaser has the option to require the seller to convey such part as the seller is able, with an abatement of the purchase price for any deficiency." Chesapeake Builders, Inc. v. Lee, 254 Va. 294, 300-01, 492 S.E.2d 141, 145 (1997). The chancellor is to exercise sound discretion in deciding whether to award specific performance. Shepherd v. Davis, 265 Va. 108, 124, 574 S.E.2d 514, 523 (2003). However, "[t]he chancellor's discretion must be exercised with a view to the substantial justice of the case." Chesapeake Builders, 254 Va. at 300, 492 S.E.2d at 145. The facts of a particular case are always paramount in the proper exercise of that judicial discretion. Firebaugh v. Hanback, 247 Va. 519, 526, 443 S.E.2d 134, 137 (1994).

In the present case, I have no quarrel with the majority's conclusion that the chancellor did not err in deciding to award specific performance of the parties' purchase contract. In my view, however, the chancellor should have been guided by Chesapeake Builders in doing so. There is no question that there was a deficiency in the title and quantity of the estate the seller had contracted to convey to

21

the buyer. The remedy fashioned by the chancellor was incomplete because it is uncertain in its requirement that the seller use his "best efforts" to rectify the deficiency or when that might be expected reasonably to be accomplished. Indeed, such incompleteness and uncertainty left future litigation a probable expectation.

The record reflects that the monetary cost of acquiring the necessary land and easements was a matter capable of determination at the time of the hearing before the chancellor. Had the chancellor required that determination to be made, an award of specific performance requiring the seller to convey the land and whatever easements he had acquired, and granting the buyer an abatement of the purchase price for the deficiency in that which was contemplated by the parties' contract, would have afforded complete relief to the buyer and not left the seller with the uncertainty that his "best efforts" would not satisfy the requirements of the chancellor's order. Clearly, such an award would have accomplished "substantial justice [for] the case." Chesapeake Builders, 254 Va. at 300, 492 S.E.2d at 145.

For these reasons, I would reverse that part of the chancellor's award of specific performance requiring the seller, Salvatore Cangiano, to use his best efforts to acquire and convey interests he did not own, and remand the case for

22

further proceedings to determine the amount of an appropriate abatement in the purchase price as of the date of the future hearing before the chancellor.